LAWRENCE HICKEY v. ST. PAUL CITY RAILWAY COMPANY and Another.[1]

| 60 | 119 |
|----|-----|
| 70 | 536 |
| 60 | 119 |
| 81 | 412 |
| 81 | 418 |

January 21, 1895.

No. 9034.

**Street Railways—Contributory Negligence.**

A person about to cross a street along which cars are propelled by electricity, having full appreciation that to do so he must act hastily or be run down, is guilty of negligence per se, if he rushes upon the track without listening or looking for the whereabouts of a car which he expects and knows is rapidly approaching the place of crossing.

Appeal by plaintiff from an order of the district court for Ramsey county, Otis, J., denying his motion for a new trial. Affirmed.

*Edmund S. Durment*, for appellant.

*Munn, Boyesen & Thygeson*, for respondents.

COLLINS, J. Action to recover for injuries caused by one of defendants' cars operated by electricity on University avenue, in the city of St. Paul. At the conclusion of plaintiff's testimony, defend-

1 Reported in 61 N. W. 893.

ants' counsel moved to dismiss, on the grounds that their clients' negligence had not been established, and also that it had been shown that plaintiff himself was guilty of contributory negligence, and the motion was granted. The facts, as disclosed, were that plaintiff was walking westerly on the southerly sidewalk of the avenue about 7 o'clock in the evening, it then being dark, with a companion; and on reaching a point about 80 feet from Marion street, which crosses the avenue at right angles, looked back, and saw a car, the one which struck him undoubtedly, standing some 700 feet distant at the intersection of Rice street with the avenue. The avenue was well lighted. The plaintiff used glasses, but his hearing was unimpaired. He was well acquainted in that locality; knew of the frequent operation of the street cars upon two tracks,—one, the southerly, being for eastbound cars; the other, northerly, being for westbound. He admitted that he knew it to be a dangerous place for pedestrians, and had the fact in mind when he started towards the crossing. Walking on about 40 or 50 feet, after noticing that the car had halted at Rice street, he attempted to cross the avenue; and then, using his own language, "I thought I had lots of time. I had a gentleman with me, and he was on the sidewalk, and I went ahead of him, and I says, 'Hurry up,' I says to him; and then he made a motion to come, and I ran across, and before I got over I got hit." He stated that he did not hear the bell, did not look for a car, nor did he hear it coming, and stood on the southerly track, the car being on the northerly, when, turning his head to the left, he urged his friend to hasten. The car was running very rapidly down grade, carried the usual headlight, and made noise sufficient to be heard more than 500 feet, according to plaintiff's own admission. When near to plaintiff, and apparently about the time the motorman discovered that he was about to run in front of the car, the latter shouted to him, but without avail. He had not quite reached the rails of the northerly track when caught by the corner of the car, and he was thrown some distance to the left.

In contending that plaintiff cannot be charged with contributory negligence, his counsel is obliged to take the position that, having looked back and noticed the car standing at Rice street, his client was justified in calculating the distance, and estimating the time it would take the car, running at a reasonable rate of speed, to reach

the place where he attempted to cross; that he had the right to assume that it would approach at reasonable speed, and was not required to look again in anticipation that its rate of speed would be unreasonable, or even to heed the glare of the headlight, or the loud noise made by the car when in motion. In his argument upon this contention counsel relies upon Watson v. Minneapolis Street Ry. Co., 53 Minn. 551, 55 N. W. 742, and insists that the cases are identical in their controlling features. There the facts were that, in daylight, Watson, the plaintiff, driving four horses, hauling a heavy load of lumber on the top of which he was seated, proceeded along a much-traveled street until he came to another on which ran electric cars. As he came to a point where he could view the track from where he sat, more than 30 feet from the heads of his leaders, he saw a car in motion about a block away. His leading team was then near the track, and he kept on. His attention was called in another direction, and he did not again look for the car, which was, in fact, running with unusual rapidity, and it struck one of the forward wheels of the wagon. We cannot agree with counsel's claim that these cases are not distinguishable. In the Watson Case we find a driver whose team and wagon covered in length more than 60 feet of the street, almost as noticeable an object as the car itself, observing the car about a block away, just as he must determine whether he shall stop or proceed across the track. Acting upon the supposition that the car would aproach at the usual rate of speed, and also, presumably, that, in the broad daylight, his four horses and heavily loaded wagon would be easily seen by the motorman, he drove upon the tracks at the intersection of two busily used city thoroughfares, where street cars as well as horses should be considerably under control, thus fairly obtaining and occupying the right of way when, although assuming it to have been running at an unreasonable rate of speed, the car must have been about 200 feet distant. Even had he looked at the last moment for action, just as his horses were coming to the rails, he would have simply discovered the car a half block away, with nothing to indicate that his horses and wagon would not be seen and his priority of right recognized. As was said in the opinion, it was not negligence per se for him to drive upon the tracks without looking for the car a second time. In the case at bar, plaintiff, while walking on the sidewalk, glanced to the rear and saw the

car. That it was not in motion was of no importance, for he could not assume that it would not start immediately, thus proving as dangerous as if it was moving when he first saw it. He was not then approaching the tracks, but, with his back to the car, walked along some 30 feet before he stepped off the walk, not at the intersection of another thoroughfare, where more care and watchfulness would be required of a motoneer than between streets, and then started across. He stopped a moment on the southerly track, and then, appreciating that he must make haste if he would escape injury, suddenly ran directly into the path of a car which, in so far as appears from the circumstances itself had the right of way. This is not all. From plaintiff's remark to his companion, who was seemingly reluctant about attempting to cross at that time, and from his own acts, it appears, almost conclusively, that he realized that if he got over before the car came he must be in haste. This realization of the necessity of very expeditious movements could hardly have come from the mere fact that he had seen the car standing 700 feet away only a few moments before, but must have been caused by a sense of its near approach. When a person about to cross a street on which cars are running appreciates that to do so he must act hastily, or be run down, he is hardly in position to say that he may rush headlong upon the tracks, into a dangerous place, without listening or looking for the whereabouts of a car which he expects is rapidly approaching the crossing, and, if he be injured, escape the charge of negligence per se. There is no merit in the claim of counsel that on the question of defendants' willful negligence the case should have been submitted to the jury. The negligence averred and relied upon in the complaint was an unlawful and unreasonable rate of speed, coupled with a failure to give proper warning or to look out for pedestrians. We have assumed that the car was running with unreasonable rapidity,—that is, negligently; but there was no testimony from which it could even be inferred that the motoneer willfully ran down upon the plaintiff. On this point there is not the slightest resemblance between the present case and that of Erickson v. St. Paul & D. R. Co., 41 Minn. 500, 43 N. W. 332. In view of our assumption that defendants' negligence was shown, we need not discuss the second assignment of error.

Order affirmed.

CANTY, J. I concur on the ground that when plaintiff stepped into the way of the moving car, or it sufficiently appeared that he was about to do so, the car had approached too near to him to be stopped or its speed checked in time to avert the injury; that under these circumstances he did not have the right of way, while the car had; and in these respects the case is wholly different from Watson v. Minneapolis Street Ry. Co., 53 Minn. 551, 55 N. W. 742. It does not appear that there was any great amount of traffic on the street, or anything else but this car, to attract or distract his attention. If, when about to step in the way of the car, he had looked along the track, even a yard or two, in the direction from which it was approaching, he could have seen it. Under these circumstances, it should be held, as a question of law, that he was guilty of contributory negligence.