70 532
72 185
70 532
75 29
70 532
d80 425
70 532
81 412
81 419
70 532
83 307
70 532
86 70

JOSEPH TERIEN v. ST. PAUL CITY RAILWAY COMPANY.[1]

December 21, 1897.

Nos 10,840—(190).

**Street Railway—Contributory Negligence of Pedestrian in Failing to Look and Listen—Question of Fact or Question of Law—Obstructions to View.**

Whether a pedestrian is guilty of contributory negligence in failing to look and listen before attempting to cross the track of a street railway is, as a general rule, a question of fact for the jury, to be determined from all the circumstances of the particular case; but the circumstances may be such, and the evidence as to those circumstances so conclusive, that the court should say, as a question of law, that he was guilty of contributory negligence in failing to look and listen. *Held,* this is such a case. *Held,* further, under the circumstances, it was not sufficient that he looked and listened at a point where he was not likely to see the approaching car, which point was some distance from where he attempted to cross the track.

Action in the district court for Ramsey county to recover $6,500 for personal injuries suffered by plaintiff. From an order, Brill, J., denying defendant's motion for judgment notwithstanding a verdict of $1,000 for plaintiff or for a new trial, defendant appealed. Reversed.

*Munn & Thygeson,* for appellant.

*Edmund S. Durment,* for respondent.

[1] Reported in 73 N. W. 412.

CANTY, J.

Plaintiff, a pedestrian, while crossing the street, was struck by defendant's street-railway electric car, and injured. This action is brought to recover damages for the alleged negligence of defendant resulting in such injury. On the trial, plaintiff had a verdict, and from an order denying a new trial defendant appeals.

In our opinion, the evidence will sustain a finding that defendant was guilty of negligence which caused or contributed to the injury, and the only other question that we deem it necessary to consider is whether or not the evidence of plaintiff's contributory negligence in failing to observe the approaching car is so conclusive that the verdict cannot stand. The injury occurred at the crossing of Fillmore avenue and Wabasha street, in a thickly populated portion of the city of St. Paul. Wabasha street extends nearly north and south, crosses the Mississippi river on a bridge, and descends on a grade of 3.85 feet in 100 feet from the south end of the bridge to Fillmore avenue. The distance from the south end of the bridge to the south side of Fillmore avenue is 275 feet. The avenue crosses the street at nearly right angles. A double-track street railway is laid on Wabasha street. This street is 80 feet wide. The sidewalks on each side of it are each 15 feet wide, leaving the roadway 50 feet in width from curb to curb. The two tracks of the street railway occupy 14 feet in width in the middle of this roadway. Fillmore avenue is 60 feet in width.

At the time in question plaintiff and his two companions had come from a saloon a block further south on Wabasha street. They stopped at another saloon on the southeast corner of Wabasha street and Fillmore avenue. His two companions entered the same and he waited for them out on the street until they returned, and then they all started across Wabasha street on the south line of Fillmore avenue, intending to go to another saloon on the opposite side of Wabasha street on the southwest corner. Plaintiff's two companions crossed the tracks, but plaintiff, who was close behind them, was on the west track, near the west rail of the same, when he was struck by the car going south. Plaintiff testified that just before he started to cross the street he stood on the middle of the sidewalk on Wabasha street, in front of the saloon on the southeast

corner, and looked both north and south on Wabasha street for an approaching car, but could see none; that he immediately proceeded to cross the street and did not look again, and never saw the approaching car until after it had struck him. This was about 8:30 p. m., on September 3. The car carried a headlight and was well lighted inside, so that it might be easily seen from the light in its windows. In looking in the direction of the approaching car from where plaintiff stood in front of the saloon, his vision might have been obstructed by one, two or three telephone or telegraph posts and by a lamp post, all of which stood in or near the sidewalk, just inside the curb; but there was nothing else to obstruct his vision except the superstructure of the bridge, the nearest end of which was 275 feet away.

There is a slight bend in the street at the bridge, so that, until the car emerged out of such superstructure and came off the end of the bridge, it might not be readily seen by a person at any point in the street crossing on which plaintiff was injured. A farmer's wagon came off the end of the bridge just ahead of the car, and immediately turned off onto Water street, which crosses Wabasha street at the end of the bridge about 200 feet from where plaintiff was injured.

It is but little excuse for plaintiff that he looked from the point at which he stood in front of the saloon. The street was well lighted with electric lights. He could see the telephone or telegraph posts and the lamp post; did see them, and knew that they obstructed his vision. After he started to cross the street and had reached the curb, there was nothing whatever to obstruct his vision unless possibly the farmer's wagon, if that was then coming off the end of the bridge. He knew that the proper place to look was, not where his vision was obstructed, but where it was not. There was nothing for him to dodge or keep out of the way of or look out for, while crossing the street, except this car, and he was not looking out for it or anything else.

He testified that he paid no attention whatever to the car, and it sufficiently appears that he paid no attention to anything else. Neither of his companions ever looked for the car at any time until they were on the track in front of it, when the attention of one of

them was attracted by the light shining on his face from the head-light of the car about 30 feet away. He instantly shouted to plaintiff and his other companion, "Hurry up; here comes the car!" But plaintiff never heard the warning, never noticed the light, and was utterly unconscious of the approach of danger until he was struck by the car. Plaintiff testified that he saw no men on the street, while he was crossing the same, except a policeman. There was evidence that there was the noise of wagons on the street, but plaintiff did not testify that he heard any such noise. Neither the wagons nor the noise seemed to have interfered with him either in obstructing his view or in distracting his attention by coming where they would cause him to try to avoid them while he was crossing the street. The noise of the wagons might have drowned the sound of the gong on the street car, but plaintiff does not seem to have heard either the one noise or the other.

One of plaintiff's witnesses testified positively that this gong was sounded very rapidly for about 30 feet before the car struck plaintiff. Another of plaintiff's witnesses testified that the gong was sounded, but quibbled about whether he remembered it or not. Two of defendant's witnesses testified that the gong was sounded for à much longer distance before the car struck plaintiff. Under the circumstances this evidence conclusively destroys the effect of the mere negative evidence of some of plaintiff's witnesses, that they did not hear the gong sounded, and it must be held as con-clusively established that the gong was sounded for at least about 30 feet before the car struck plaintiff. All of these facts are con-clusively established by the testimony of plaintiff and his own wit-nesses. If plaintiff did not hear the gong while the car was run-ning this 30 feet, it is not probable that he would have heard it when the car was further away, even if it had then been sounded.

Plaintiff claims that the car ran at the rate of from 15 to 20 miles an hour, and that when he stood in front of the saloon and glanced up the street and could see no car, it put him off his guard; and that, if the car had been running at a reasonable rate of speed, he would have got across the tracks before the car would have arrived at the point at which he was injured. But it is no excuse for him that he stood behind a number of very large telegraph or telephone

poles, looked for a car beyond the poles, and then relapsed into a condition of being absolutely blind and deaf while he was walking across the street, when he could have seen the car for 200 or 275 feet from any point in the course he traveled except the point at which he looked.

This court has often ·held that, as a question of law, there is not the absolute duty to look and listen before attempting to cross the track of a street railway that there is before attempting to cross the tracks of an ordinary commercial steam railway. But, as a question of law, there is still some duty to look and listen before attempting to cross the tracks of a street railway; and this duty may be greater where the cars on the street railway are propelled by electric power than where they are pulled by horses, because in the former case the cars are often heavier, run much faster, and cannot be as readily or as quickly controlled.

Ordinarily, it is a question of fact for the jury to determine from all the circumstances in the case to what extent the plaintiff should have looked and listened before attempting to cross the tracks of a street railway, and whether he performed his duty in that respect. But the circumstances may be such, and the evidence so conclusive, that the court should say as a question of law that plaintiff was guilty of contributory negligence in failing to look and listen; and we are of the opinion that this is such a case.

In Hickey v. St. Paul, 60 Minn. 119, 61 N. W. 893, we held, as a question of law, that the plaintiff therein, a pedestrian, was guilty of contributory negligence in failing to look and listen before attempting to cross the street-railway track. The excuse for not looking and listening was somewhat similar in that case to what it is in this. When the plaintiff therein was a considerable distance from the point where he attempted to cross the track, he saw the car standing about 700 feet from that point, and did not suppose it could reach that point before he had got across the track, which it would not have done if it had run at a reasonable rate of speed. But we held, in effect, that a person of reasonable care would not have trusted himself to any such uncertain calculation, when it was so easy for him to turn his head as he was approaching the

crossing, and see if the car was also approaching, and when there was nothing else for him to look out for except that car.

Respondent cites Watson v. Minneapolis, 53 Minn. 551, 55 N. W. 742, as authority for the proposition that whether, after plaintiff had looked for the car as he stood on the sidewalk, he was warranted in attempting to cross the track without looking again, was a question for the jury, not for the court. The facts in that case were wholly different.

Watson was driving a four-horse team, which was drawing a large load of lumber, weighing about 4,000 pounds, and the whole outfit was about 60 feet long. He was sitting up on the load, driving along on one street, and when he approached the cross street on which the street cars ran he looked along that street for an approaching car as soon as he had passed the line of the buildings, and saw one about a block away. At this time the heads of his two lead horses were already but a short distance from the street-railway tracks, and the outfit moved but a short distance until his lead horses passed over the first track and were upon the track on which the car was approaching. Up to this time he did not look again, but, even if he had, it would still be a question for the jury whether, under all the circumstances, he would not be justified in attempting to cross ahead of the car, as the jury were warranted in finding from this evidence that the car was more than half a block away when the lead horses came to this track. When the lead horses came upon this track, Watson had ventured beyond retreat, and the motorman should have used reasonable care to discover that fact, and to give Watson the right of way. If the car was then a half block away, there was sufficient time to slack its speed, and stop it, if necessary, in order to give Watson's long outfit time to pass over without a collision. In that case Watson ventured beyond retreat, and took the right of way when the car was more than half a block away, and the motorman should have known that Watson's outfit would have to travel about 66 feet to clear the track.

In the case at bar the plaintiff could have cleared the track in 5 or 6 feet, and he ventured beyond retreat when the car could not be more than 20 or 30 feet from him, and when it was impossible for the motorman to stop the car, or give him the right of way. We

are of the opinion that the evidence will not sustain a verdict for plaintiff, and this renders it unnecessary to consider any other question in the case. Appellant having brought itself within the provisions of Laws 1895, c. 320, we are of the opinion that judgment should be ordered in its favor notwithstanding the verdict.

It is so ordered.