Marian Ames, Administratrix of the Estate of David B. Ames, Deceased, Appellant, v. Waterloo & Cedar Falls Rapid Transit Company.

Street Railways: PERSONAL INJURY: EVIDENCE. In an action against 1 a street railway company for an injury resulting in death, it appeared that several covered wagons following each other were passing along a street in close proximity to the car track. Deceased stepped from behind the last of these upon the track and was struck by a car. There was evidence showing that the car was running at an unlawful speed, but there was no evidence of the exercise of care by deceased at the time of the injury, the circumstances surrounding the accident, however, were shown. *Held,* that a verdict for defendant was properly directed.

Instinct of Self Preservation: PRESUMPTION. The presumption 2 that deceased, prompted by the instinct of self-preservation, was exercising due care for his own safety at the time of the accident does not obtain where there is direct evidence of the circumstances surrounding the injury.

Contributory Negligence: PRESUMPTION. One who is struck by a moving street car while crossing the track in full possession of his senses, with an unobstructed view of the track and in no way

distracted or interfered with so that by looking and listening he might have avoided the danger, is conclusively presumed to be guilty of contributory negligence.

Reasonable Care. In crossing a street car track, one is bound to know that cars are likely to pass and to take reasonable care to avoid the injury.

Reasonable Care: OBSTRUCTED VIEW. Where a view of the track is obstructed by an object in such close proximity thereto that an unobstructed view for any considerable distance between the time of passing the obstruction and coming upon the track is impossible, it is the duty of one attempting to cross under such circumstances to stop, if necessary, and employ his natural faculties in an effort to avoid the danger.

Instinct of Self Preservation: EVIDENCE. A presumption of the exercise of the instinct of self-preservation does not constitute affirmative evidence of the existence of facts prior to, and remote from the time of the accident.

Reasonable Care: WHEN TO BE EXERCISED: PRESUMPTION. It was necessary for deceased to exercise care at the time of crossing the track, and where the evidence shows a want of such care, it is not overcome by a presumption of its exercise at some other time.

WEAVER, J., and DEEMER, J., dissenting.

*Appeal from Black Hawk District Court.*—HON. F. C. PLATT, Judge.

MONDAY, MAY 25, 1903.

ACTION by plaintiff, as administratrix, to recover damages for the death of her intestate, David B. Ames, caused by a collision between him and a street car operated by the defendant company. At the close of the evidence the court instructed the jury to return a verdict for defendant, and from judgment thereon plaintiff appeals.—*Affirmed.*

*Reed & Tuthill* for appellant.

*Mullan & Pickett* and *D. T. Gibson* for appellee.

McCLAIN, J.—It may perhaps be assumed, from the hour of the day and the place and the street where the

accident occurred, that deceased had left his work at the noon hour, and was passing diagonally northwestward across Fourth street, which runs in front of the railroad shops, where he was employed, to reach a street intersection on the other side on his way home. No witness actually testifies to having seen him until the very moment of the accident. It appears that five or six covered wagons,

1. PERSONAL injury: evidence.

described as "movers' wagons," were following one after the other southward on Fourth street, close to the street railway track, and that deceased stepped from behind the last of these wagons towards the track, and was struck by a car of defendant, coming from the south, just as he stepped upon, or was about to step upon the track to pass across it. Deceased died the next morning as the result of injuries received in the accident. The evidence tended to show that defendant's car was being operated at a greater rate of speed than the maximum fixed by ordinance. There is no evidence that any care was exercised by deceased to avoid collision with the car, and it is contended that the trial court properly directed a verdict for defendant on the ground that it did not appear that at the time of the accident deceased was in the exercise of due care with reference to his own safety. Had there been no evidence whatever as to the circumstances surrounding the deceased at the time his injury

2. INSTINCT of self preservation: presumption.

was received, or as to how the accident occurred, the presumption would be entertained that, prompted by the instinct of self-preservation, the deceased was taking reasonable precautions for his own safety. But several witnesses saw deceased just as he stepped forward from behind the moving wagon and was struck by the car, and the fact that there was such evidence as to what occurred prevents the presumption which would otherwise be drawn from the instinct of self-preservation from being entertained. *Bell v. Incorporated Town of Clarion*, 113 Iowa, 126.

The question for us to determine, then, is simply whether, under the evidence, there is anything tending to show freedom from contributory negligence on the part of deceased which made it necessary that that question should be submitted to the jury. It is well settled that one who is struck by a moving car while attempting to cross the track on which the car is moving, and who at the time is in full possession of his senses, and has an unobstructed view of the track, so that by looking and listening he might have avoided the approaching car, and is in no way distracted nor interfered with by surrounding circumstances or conditions either in seeing the car or avoiding it, is conclusively presumed to be guilty of contributory negligence. *Beem v. Tama & T. Elec. R. L. Co.*, 104 Iowa, 563; *Creamer v. West End Street R. Co.*, 156 Mass. 320 (31 N. E. Rep. 391, 16 L. R. A. 490, 32 Am. St. Rep. 456); *Cawley v. La Crosse City R. Co.*, 101 Wis. 145 (77 N. W. Rep. 179); *Smith v. City & Suburban R. Co.*, 29 Or. 539 (46 Pac. Rep. 136, 780); *Everett v. Los Angeles Consolidated Electric Co.*, 115 Cal. 105 (43 Pac. Rep. 207, 46 Pac. Rep. 889, 34 L. R. A. 350). While a street car company does not have the exclusive right of way on its tracks in a city in the same sense that a steam railroad company has the exclusive use of its right of way at places other than a highway crossing, nevertheless a person attempting to cross a street car track is bound to know that cars are likely to pass on such track, and is bound to take reasonable care to avoid injury by their coming in contact with him. *Bailey v. Market Street Cable Co.*, 110 Cal. 320 (42 Pac. Rep. 914); *Smith v. Electric Traction Co.*, 187 Pa. 110 (40 Atl. Rep. 966).

It is contended for the appellant, however, that in the present case deceased was not in a situation to see the approaching car, by reason of the obstruction to his view offered by the moving wagons, until he had gone into a

*3. CONTRIBUTARY: negligence: presumption.*

*4. REASONABLE care.*

place of danger. But it is to be noticed that there was nothing in the proximity of the wagons to distract his attention, or make it necessary for him to exercise a judgment in avoiding any danger other than that to be apprehended from an approaching street car. The wagons were moving, and he was behind the last one. He was, as it were, in a place of retreat, where he was perfectly safe from any danger to be apprehended, except such as might result from his going upon the street car track. *Terien v. St. Paul City R. Co.*, 70 Minn. 532 (73 N. W. Rep. 412); *Hickey v. St. Paul City R. Co.*, 60 Minn. 119 (61 N. W. Rep. 893). By looking or listening he could have discovered, before putting himself in danger, whether a car was approaching, and we think there can be no question as to his duty to take such precaution for his own safety.

Where a passenger, after alighting from a street car, passed round the end of the car, and came into collision with a car on another track, it was held that such person was, as matter of law, chargeable with contributory negligence such as to defeat recovery. *Smith v. City & Suburban R. Co.*, 29 Or. 539 (46 Pac. Rep. 136, 780). So, where one approached a street car track back of a row of trees extending along the track, which obstructed his view, it was held that, as matter of law, he was negligent in not stopping to look or listen for a car when he passed the end of the row of trees and went upon the track. *Kelly v. Wakefield & S. Str. R. Co.*, 175 Mass. 331 (56 N. E. Rep. 285). In this last case it is conceded that it is not in all cases essential to stop for the purpose of looking and listening when about to go upon a street car track; but in that case, as in this, the obstruction was so close to the track that there could not have been an unobstructed view for any considerable distance between the time of passing the obstruction and coming upon the track, and the court held that it was the duty of plaintiff, "knowing that he could not see a car,

5. REASONABLE care: obstructed view.

which was behind the trees, and knowing that a car might have passed in behind the trees before he looked," as he approached the track, to stop, if necessary, to discover whether there was danger before going upon the track, and that he was negligent in not taking "any pains to see that such a car had gone by before he drove onto the crossing, or was so near to it that some accident was inevitable." So here we are compelled to say that the deceased was conclusively guilty of negligence in that he went from behind the obstruction of the moving wagon into a place of danger without taking any precaution whatever to anticipate or avoid the danger incident to his own act. The duty of deceased was to "pay attention to his surroundings and employ his natural faculties and exert due diligence to avoid such danger." *Everett v. Los Angeles Consolidated Electric Ry. Co.*, 115 Cal. 105 (43 Pac. Rep. 207, 46 Pac. Rep. 889, 34 L. R. A. 350).

Counsel for appellant contend, however, that the presumption arising from the instinct of self-preservation is not to be limited to the very instant of going into danger, as to which we have seen by the cases already cited, it is expressly negatived and overcome, but that it may be presumed that deceased, on leaving the curbing, about seventeen feet from the street car track, looked in the direction from which this car was coming, and, seeing it further south than the line of wagons, which must have extended at least one hundred and fifty feet along the track, calculated that, if the car was approaching at a lawful rate of speed, he would have time to cross the track before the car would reach him, and that the question whether this calculation on his part was reasonable should have gone to the jury. There are several objections to this line of reasoning. In the first place, there is not a scintilla of evidence that deceased looked before he left the curbing and saw the approaching car so far away that it would not reach him, if moving at a lawful rate of speed, until he

might reasonably expect to have crossed the track. There is no showing whatever as to what deceased did or saw when he left the curbing. Certainly the presumption of the exercise of the instinct of self-preservation cannot constitute affirmative evidence of the existence of facts prior to and remote from the occurrence of the accident itself. It might as well be presumed, to justify deceased in not taking precautions at the time of the collision, that he had been advised by the manager of the street car company that no cars would be run on the track on that day. If he had had such advice, he might perhaps be excused for not looking for a car, but certainly the presumption arising from the instinct of self-preservation would not constitute evidence that he had had any such advice.

6. INSTINCT of self preservation: evidence.

The origin in this state of the rule that the presumption of action dictated by the instinct of self-preservation is due to the peculiar doctrine announced by this court in early cases that the burden of showing affirmatively freedom from contributory negligence is on the plaintiff; and it was introduced in order to avoid the evident injustice of such a doctrine in cases where there was no evidence whatever one way or the other as to the exercise of care by the injured party, and no such evidence was attainable by reason of the death of the party injured and absence of any proof as to the circumstances attending the injury. *Greenleaf v. Illinois Central R. Co.*, 29 Iowa, 14; *Way v. Illinois Central R. Co.*, 40 Iowa, 341. Where there is direct evidence as to the circumstances of the accident, the presumption is not to be entertained. See *Bell v. Incorporated Town of Clarion, supra,* where the cases are fully collected. It never has been held that the presumption from the instinct of self-preservation constitutes affirmative proof of any specific act, or the exercise of any specific care. The deceased in this case would not have been guilty of contributory negligence by reason of failure to

look when he left the curbing. All that was necessary was that he should exercise care with reference to the crossing

7. REASONABLE care: when to be exercised: presumption.

of the street and going upon the street car track. *Terien v. St. Paul City R. Co.*, 70 Minn. 532 (73 N. W. Rep. 412); *Metz v. St. Paul City R. Co.*, (Minn.) 92 N. W. Rep. 502; *McGee v. Consolidated Str. R. Co.*, 102 Mich. 107 (60 N. W. Rep. 293, 26 L. R. A. 300, 47 Am. St. Rep. 507); *Watkins v. Union Traction Co.*, 194 Pa. 564 (45 Atl. Rep. 321); *Nugent v. Trac'ion Co.*, 181 Pa. 160 (37 Atl. Rep. 206). Therefore it was not necessary, in order to negative contributory negligence, that plaintiff should specifically prove that deceased did look before leaving the curbing. There was direct evidence of contributory negligence at the instant of the accident, and this is not to be overcome by a pure presumption with reference to the exercise of care at some other time. As said in *Baker v. Chicago R. I. & P. R. Co.*, 95 Iowa, 163, "All that can be assumed in this case is that [deceased] was doing what he was when" he was seen; that is, to paraphrase the language of that case, stepping from the street into a place of danger before a moving car, without taking any precautions as to his safety. In further analogy to this case, we can say that, if deceased did not see or hear the approaching car, it was because he was not attentive, and in that respect was negligent; and the facts in this case, as in that, clearly overcome any presumption to arise from the rule as to instinct of self-preservation.

Counsel for appellant relies on a line of cases in which it is held that where a person about to cross a street car track is required to exercise judgment as to whether he can cross before an approaching car reaches him, the question whether he was justified, as a reasonable person, in making such attempt, is for the jury. *Patterson v. Townsend*, 91 Iowa, 725; *Callahan v. Philadelphia Traction Co.*, 184 Pa. 425 (39 Atl. Rep. 222); *McGovern v. Union Trac-*

*tion Co.*, 192 Pa. 344 (43 Atl. Rep. 949); *Lawler v. Hartford Str. R. Co.*, 72 Conn. 74 (43 Atl. Rep. 545); *Consolidated Traction Co. v. Glynn*, 59 N. J. Law, 432 (37 Atl. Rep. 66); *Watson v. Minneapolis Str. R. Co.*, 53 Minn. 551 (55 N. W. Rep. 742). But even in cases of this character it is well settled that the person crossing the street has no right to make nice calculations and accept an imminent danger. *Terien v. St. Paul City R. Co.*, 70 Minn. 532 (73 N. W. Rep. 412); *Hickey v. St. Paul City R. Co.*, 60 Minn. 119 (61 N. W. Rep. 893); *Watson v. Mound City Str. R. Co.*, 133 Mo. 246 (34 S. W. Rep. 573). The fundamental difficulty with the whole theory of counsel for appellant in this respect is that there is no evidence that deceased looked for any car, or saw any car. This is not a case, therefore, where it appears that some care was exercised, and it is for the jury to determine whether the amount of care was such as a reasonably prudent person would exercise under the circumstances, and the case is therefore distinguished from *Hart v. Cedar Rapids & M. O. R. Co.*, 109 Iowa, 631, and *Moore v. Chicago St. Paul & K. C. R.*, 102 Iowa, 595. There was neither presumption nor evidence that the deceased exercised any care whatever for his own safety, or that he was in such a situation that it was not practicable for him to exercise care, and the trial court properly directed a verdict for the defendant.—AFFIRMED.

WEAVER, J. (dissenting).—In my judgment, the record presents a case which should have been submitted to the jury. The evidence would clearly justify a finding that the car which struck the plaintiff's intestate was being operated at a reckless rate of speed along a much traveled street, and in clear violation of a city ordinance. Assuming that the jury believed this testimony, as was their right to do, the negligence of the defendant was abundantly established. The deceased was strictly within his

legal rights in crossing the street.   There was evidence
tending to show that the street was straight for several
blocks in either direction, and as deceased left the curb
and approached the procession of covered wagons he could
see the car approaching at such a distance that, if moving
at a lawful or reasonable rate of speed, he could cross the
track in safety before the car would reach that point.
Standing in the street and viewing an approaching car
from the front and at a considerable distance, an ordinary
observer cannot easily determine whether its speed is ex-
cessive.   Deceased had the right to assume that this car
was being operated with reasonable care, and within the
lawful maximum of speed, and he was, therefore, justified
in assuming that he might with safety cross the track
behind the wagon without danger of being run down and
killed by that particular car.   At least, it was a fair ques-
tion for the jury whether, as a reasonably prudent person,
he could rely upon the appearance of safety, and make the
attempt.   It is said, however, that no witness saw him
from the time he left the curb until he emerged from
behind the wagon, and that, therefore, it cannot be pre-
sumed he looked or took any precaution for his safety.
This proposition is sought to be sustained by the argument
that living witnesses of the accident having been pro-
duced, we cannot entertain any "presumption that,
prompted by the instinct of self-preservation, deceased
was taking precautions for his own safety."   This seems
to me an extreme and unwarranted application of the rule
laid down in *Bell v. Incorporated Town of Clarion*, 113
Iowa, 126.   In the first place, there are no living witnesses
of the accident in the proper sense of that term.   There
are witnesses who had an instantaneous glimpse of the
collision, but of nothing more; and none of them details
facts or circumstances which we can say as a matter of law
charge the deceased with contributory negligence.   The
sight of a car and a man in collision on a railway crossing,

and no more, affords not the slightest ground for the court to arbitrarily determine the question of negligence or contributory negligence. Those matters are not to be found from the mere fact of collision alone, but also from the facts and circumstances immediately preceding and leading up to it, and, if living witnesses of these vital circumstances are not available, we may then indulge in all proper presumptions and inferences concerning them.

No case has been decided by us, not excepting *Bell v. Incorporated Town of Clarion*, which goes farther than to say that, as to any particular material act or fact of which living witnesses are able to testify, no presumption of due care will be indulged. It has never been, and I trust never may be, held that where the question of contributory negligence depends, or may depend, upon a series of facts or circumstances, the production of living witnesses as to one has the effect to exclude all presumption or inference of due care as to others of which no witnesses can be found. Indeed, as I read the authorities, the contrary rule is well established. In *Whitsett v. R. R.*, 67 Iowa, 158, in discussing this question, we said: "But when the facts of the transaction are proven by direct testimony the question whether the party acted negligently or with care is to be determined from those facts." In *Reynolds v. City of Keokuk*, 72 Iowa, 372, we referred to our prior decisions in this class of cases, and in explanation said: "In these last cases the injured person was dead; and what caused his death, or the facts tending to show contributory negligence on his part, or the reverse, did not clearly and certainly appear; and therefore the instinct of self-preservation was held to be a circumstance which the jury was entitled to consider. But where the injured person is living, and does or can testify to the facts and circumstances and in what manner the injury was received, then there is no reason why the inference arising from the instinct of self-preservation

should be indulged." In *Hopkinson v. Knapp*, 92 Iowa, 328, we said: "It is true there is no affirmative evidence of due care on the part of the decedent to avoid the accident and to enable plaintiff to recover it must be shown that decedent was free from negligence. Direct and positive evidence that decedent did not, by his own negligence, contribute to the injury, is not required. Where such evidence cannot be obtained, it is proper for the jury to consider the instincts of men which naturally lead them to avoid danger as evidence of due care on the part of the person injured." In *Baker v. R. R.*, 95 Iowa, 171, we again explained that it was our purpose to apply the rule to cases where the conduct of the person injured "is traced so closely to the accident that from it, aided by the presumption that arises from a natural disposition to avoid injury, the fact of diligence could well be found." In *Dunlavy v. R. R.*, 66 Iowa, 435, we denied the benefit of the presumption because the party having the burden of proving care could "show by direct evidence what care was exercised" by him. In the *Bell Case*, we once more said that, "where there is direct evidence as to whether or not the injured party was negligent, then the inference is entitled to but little, if any, weight." In that case the husband of the deceased woman was a witness on the trial, and showed that he was in her immediate company at the time of her injury, though not seeing the movement of the plank which caused the accident; yet we held the "inference," as distinguished from a "presumption" of care, to be drawn from the natural instinct of self-preservation, was to be considered by the jury. Whether the shadowy border land between an "inference" and a "presumption" is one which either court or jury may profitably explore we need not consider, for it is enough to say that, so long as the testimony affords room for even a legitimate "inference" of due care, the court is going beyond its province in directing a verdict.

The case at bar fills every definition of the rule laid down in the *Bell, Reynolds, Whitsett, Hopkinson,* and *Baker Cases.* "The facts of the transaction," "the facts tending to show contributory negligence or the reverse," are not shown by living witnesses, and by reason of the death of the injured party it is not possible for his administrator to "show by direct evidence what care was exercised by him." That this is a proper case to apply the presumption from the natural instinct of self-preservation is upheld by the principle announced in every decision I have been able to find in which such presumption is recognized as admissible under any circumstances. It is perfectly obvious that whether deceased was exercising reasonable care when he stepped from behind the moving wagon to the railroad track depends largely, if not entirely, upon the precaution exercised by him in going from the curb to the wagon. Of that fact no living witness can speak, and the presumption or inference we have been considering speaks for the dead. It is inconceivable how, in the light of this record, we can say there is such direct and positive evidence of the contributory negligence of the deceased as to exclude the question from the jury. Not a single witness saw him for a sufficient space of time, or at such a distance from the point of collision, as to see or know whether his conduct was marked with recklessness or with due care. The space between the wagon and the car was so narrow that the motorman testified that he could have touched the other vehicle with his hand as he flew past. One witness says that there was "no perceptible time" between the appearance of Ames behind the wagon and the collision with the car. The motorman did not see him at all until he was struck. Another witness says. "No length of time elapsed between when I saw the man and he was struck. It was a flash—instantaneous." Yet we are told that, because two or three witnesses caught this flash-like view of the impact between the unfortunate

man and the moving car, knowing nothing of his method of approach or of his care to assure himself of the absence of danger before approaching the screen created by the wagons, there can be neither presumption nor inference that in making his approach he acted according to the instincts which impel a normal man to avoid death or enormous bodily harm.   The statement of the proposition is its own refutation.   Why is the presumption ever indulged?   Simply, under the rule of our decisions, to supply the best obtainable evidence of a material fact concerning which no living witness is found to testify.   If, for instance, due care required the deceased to stop, look, or listen before venturing to cross the track, and direct evidence of his conduct in that respect is not obtainable, then from the natural instinct of self-preservation which influences normal human action in a place of known danger the jury may find that he did in fact exercise such care.   We have repeatedly held, even as applied to an ordinary railway, that the court cannot say, as a matter of law, at what particular point or limit in the approach to a crossing this duty to stop, look, or listen must be attended to; or whether, having looked or listened at one point within a reasonable distance, he is bound to look again before stepping upon the track.   *Winey v. R. R. Co.* 92 Iowa, 622; *Mackerall v. R. R. Co.*, 111 Iowa, 547; *Moore v. R. R. Co.*, 102 Iowa, 595; *Cummings v. R. R. Co.*, 114 Iowa, 86.

How can it be said, then, because in the instant between the discovery of the decedent at the rear of the wagon and the collision, he was not seen to pause and look for the car, we must deny him the presumption of reasonable care to that point?   We are told by the majority opinion "there was direct evidence of contributory negligence at the instant of the accident," and "therefore it is immaterial what care he may have exercised prior to that moment."   This, it seems to me, is a begging of the entire

question—an assumption of the very fact in issue. How are we able to say that deceased was at that moment doing a negligent act when the question of its negligence depends or may depend upon what preceded it? The citation of the *Baker Case* in support of this assumption is not in point. In that case the deceased was last seen walking along (not across) the track of a railroad (not street railroad), and was, therefore, a trespasser, a wrong-doer, voluntarily putting himself in a place where the railroad company was under no duty to be on the lookout for him. There being no duty to exercise care for the safety of one on the track without authority, and there being no evidence that the deceased was seen by the trainmen in time to avoid the injury, there was an entire failure to prove any negligence on the part of the company, and such being the case, it was very properly held that the ordinary presumption as to the instinct of self-preservation could not prevail over this evidence of his contributory negligence. No further statement is needed to show the inapplicability of that precedent. We are also told "it has never been held that the presumption from the instinct of self-preservation constitutes affirmative proof of any specific act or the exercise of any specific care," and that such presumption "cannot constitute affirmative evidence of facts prior to and remote from the occurrence of the accident itself." Conceding the correctness of this statement as to "remote" occurrences, it can be readily shown that the proposition is in other respects clearly out of harmony with our own decisions and the decisions of other courts recognizing the presumption above mentioned.

In *Dalton v. R. R.*, 104 Iowa, 26, deceased met his death upon a public crossing by collision with a train running at a negligently high rate of speed. The accident occurred at night, and, according to the statement in the opinion, "no one witnessed the accident, nor the manner in which the deceased approached and went upon the

·crossing." It was further said:· "It cannot· be questioned that in going upon that crossing when he did the exercise of ordinary care required that deceased should have :stopped and looked and listened to know if a train was approaching. It is a recognized rule of human conduct ·that persons in their sober senses naturally and instinct- ·ively seek to avoid danger. Therefore it must be pre- sumed, till the contrary appears, that the deceased, prompted by this natural instinct, did exercise care in approaching and going upon that crossing." And ·upon this presumption alone we held the trial court to have erred in directing a verdict for the defendant. In other words, it was there held that the presump- tion from natural instinct did afford affirmative, sub- stantive evidence that deceased did do the specific thing which we said he was clearly bound to do —"stop and look and listen." Such, also, is the principle to be de- ·duced from *Hopkinson v. Knapp*, 92 Iowa, 328, and, indeed, from all of that line of cases. Due care ordinarily implies a certain line of conduct, specific acts of watch- ·fulness or caution, and the presumption that a deceased ·person was not guilty of contributory negligence is neither ·more nor less than a presumption that he did do the ·specific act or thing which reasonable prudence dictated ·under the circumstances. It has also been expressly held ·in other jurisdictions that, where a person has been killed ·upon a railroad crossing, and there is no direct evidence of ·the circumstances of the accident, the law will presume ·the deceased to have stopped, looked, and listened. *Mynning v. R. R.*, 64 Mich. 93 (31 N. W. Rep. 147, ·8 Am. St. Rep. 804); *McBride v. R. R.*, 19 Or. 64 ·(23 Pac. Rep. 814).

In *Hendrickson v. R. R.*, 49 Minn. 245 (51 N. W. Rep. ·1044, 16 L. R. A. 261, 32 Am. St. Rep. 540), there was ·direct evidence that the deceased was seen to drive down ·to and upon the right of way, and was discovered by the

engineer an instant before the collision; but there was no evidence whether he looked or listened—circumstances in all essential respects parallel with those of the case at bar. The court there held: "A plaintiff administrator is not required in all cases of this character to prove affirmatively that his intestate looked or listened. It may be inferred, in view of the circumstances, that the deceased, governed by the instinct of self-preservation, did what a prudent man ordinarily would do to save his life." The Pennsylvania court, which applies the rule of "stop, look, and listen" with the utmost rigor as an unbending rule of law, has also announced the same doctrine. *Penn R. R. v. Weber*, 76 Pa. 157 (18 Am. Rep. 407); *Schum v. R. R.*, 107 Pa. 12 (52 Am. Rep. 468). In *Lyman v. R. R.*, 66 N. H. 200 (20 Atl. Rep. 976, 11 L. R. A. 364), the New Hampshire court, discussing a crossing accident, says: "It is true it does not definitely appear that the deceased used any precautions to avoid the collision, but it is a presumption of common sense as well as of the common law that persons of mature years and in possession of their senses are ordinarily prudent, and will exercise ordinary diligence to avoid danger." In *Philipps v. R. R.*, 77 Wis. 349 (46 N. W. Rep. 543, 9 L. R. A. 521), a pedestrian in the act of crossing a track was struck and killed by a moving train, but the details of the accident were not made clear by the evidence. To an objection raised by the railway company that nothing was shown as to how the deceased came to the place of collision, the court replies: "If the manner of his coming there was not shown, then no negligence of the deceased could be predicated upon it." And to the objection based on the absence of any showing that deceased looked or listened, it was further said, after reviewing the circumstances: "These facts may well modify the rule that it was the duty of the deceased to look just at the time the cars were near him. It may be he had looked in that direction, but when the detached

cars had not yet started on the side track. He is not here to be questioned as to what he did or did not do, and his conduct is entitled to all reasonable probabilities. One thing is certain: he did not know these cars were creeping towards and so near him when he undertook to cross the track."

An intestate was found fatally injured in a pit negligently left unguarded. He was acquainted with the pit, and knew of its unguarded condition. There was no witness of the accident. The trial court having nonsuited the administrator because of his failure to show want of contributory negligence on part of the deceased, the judgment was reversed. The court says: "The person injured did not live to tell his story. We think the case should have been submitted to the jury. There is ordinarily a certain degree of presumption that a person of ordinary intelligence will not purposely expose himself to danger." *Cassidy v. Angell*, 12 R. I. 447 (34 Am. Rep. 690).

Discussing the same proposition, the New York court says: "The *onus probandi* in this, as in most other cases, depends upon the position of the affair as it stands upon the undisputed facts. Thus, if a carriage be driven furiously upon a crowded thoroughfare, and a person is run over, he would not be obliged to prove that he was cautious and attentive, and he might recover though there were no witnesses of his actual conduct. The natural instinct of self-preservation would stand in the place of positive evidence, and the dangerous tendency of defendant's conduct would create so strong a probability that the injury happened through his fault that no other evidence would be required." *Johnson v. R. R.*, 20 N. Y. 65 (75 Am. Dec. 375). In the absence of direct proof, the jury are at liberty to infer ordinary care from the circumstances of the case. To hold otherwise would be to presume negligence on the part of one in excuse of proved or

admitted negligence on the part of another. *Louisville R. R. v. Goetz's Adm'x.*, 79 Ky. 442 (42 Am. Rep. 227); *Gay v. Winter*, 34 Cal. 164. See, also, *Chesapeake & O. Ry. Co. v. Steele's Adm's*, 29 C. C. A. 81 (84 Fed. Rep. 93, 54 U. S. App. 561); *Kimball v. Friend's Adm'r.*, 95 Va. 139 (27 S. E. Rep. 901); *Southern R. R. v. Bryant's Adm'r.*, 95 Va. 221 (28 S. E. Rep. 183); *Northern R. R. v. State*, 31 Md. 357 (100 Am. Dec. 69); *Chicago R. R. v. Carey*, 115 Ill. 115 (3 N. E. Rep. 519).

It is to be conceded that decisions may be found which seem to deny the existence of the presumption in any case, but the doctrine of its existence is upheld by the great weight of authority. In no other case have we found it restricted to such narrow limits as are drawn in the majority opinion.

But, aside from this presumption and the question of its extent, the case is still one for the jury. The deceased was not a trespasser. He had an undoubted legal right to cross the street—a right which the appellee was bound to respect by operating its cars at reasonable speed, and with due care for his safety. It necessarily follows that deceased was not so strictly bound by the rule of "stop, look, and listen" as would be the case in crossing the right of way of an ordinary railroad. *Orr v. R. R.*, 94 Iowa, 426; *Beem v. R. R.*, 104 Iowa, 565; *Walker v. R. R.*, 81 Minn. 404 (84 N. W. Rep. 222, 51 L. R. A. 632); *Newark etc., Ry. Co. v. Block*, 55 N. J. Law 605 (27 Atl. Rep. 1067, 22 L. R. A. 374). He had the right to proceed upon the theory that the railroad company would do its duty. He was not required to anticipate its culpable negligence. *Smith v. Union Trunk Line*, 18 Wash. 351 (51 Pac. Rep. 400, 45 L. R. A. 169); *Cincinnati R. R. v. Snell*, 54 Ohio St. 197 (43 N. E. Rep. 207, 32 L. R. A. 276). As suggested in the opinion in the New York case above cited, the man who drives his horse furiously down a crowded city street to the imminent peril of other travelers is not to be allowed

to escape from the consequences of his wrongful act by saying to one whom he has thus injured, "You ought to have been looking out for me, and thus have avoided injury." The street railway company which shoots its car like a flying cannon ball along a public way with equal disregard of the safety of others and its duty to obey the law occupies not a whit better position than the reckless driver of a private conveyance. In neither instance is the peaceable traveler required to anticipate the negligence or wrong of another, nor is he chargeable with contributory negligence if, by acting upon the presumption that all vehicles will be managed with reasonable care, he receives an injury. The natural and usual thing for a pedestrian of ordinary experience and care, as he turns from the curb or sidewalk to cross a street in which a railway operates, is to look for approaching cars. If, in this instance, the deceased did look, he saw the car at a presumably safe distance to permit the crossing. If he did not look, he lost sight of nothing which we can say as a matter of law should have warned him of danger from that source. The only theory upon which a failure to look or listen is held to be negligence is that by looking or listening the traveler would have discovered something giving him notice of the peril in time to avoid it.

Says the Ohio court: "Ancient rights have not changed because new vehicles have been introduced upon the streets, nor because a portion of the people who ride, being in haste to reach their destination, demand rapid transit. The streets remain for all the people, and he who goes afoot has the right, especially at a crossing, to walk to his destination. He should not be compelled to run or to dodge and scramble to avoid collision with vehicles. As a general proposition, drivers of vehicles have the same right to travel along the carriageway that foot passengers have to walk there. There is no priority of right. So that the right of neither is exclusive.

\* \* \* Life and limb are of more consequence than quick transit. The vehicle man must not run down the pedestrian. The opposite doctrine seems to have found lodgment in many minds, and there seems to be a disposition to assume that a foot passenger has no right upon a public street against a street car. Indeed, common observation seems to show that this belief controls the conduct of drivers of many conveyances, public and private. Too often there is a reckless disregard of human life and limb, and pedestrians are compelled at their peril to keep out of the way. \* \* \* We suppose the rule for street cars is the same as for other vehicles, and if the footman is required in a crowded thoroughfare to look up and down and wait until all possibility of collision is past it would be like sitting on the bank until the stream should run by." *Cincinnatti R. R. v. Snell, supra.*

In the case from which the foregoing quotation is made the plaintiff, leaving a car on one track, stepped across a three-foot space upon another track, and was run down. It was sought to avoid liability by urging that the plaintiff could have avoided injury by looking, and therefore could not recover; but the court says: "Whether looking eastward would have disclosed the coming car depends upon whether the receding car would have obstructed the view, and this depends upon its location at the time Snell looked, if he did look. The evidence is consistent with the conclusion that he looked up the track, but that the receding car prevented him from seeing the approaching one, and that, as the former made some noise, his attention was not called to the rumbling of the latter. And it is not inconsistent with the conclusion that ordinary range of vision would probably have enabled him, without turning his head or eyes up the track, to see the car in time to avoid it, had the car been running at a safe rate of speed; and we think one crossing could not be asked to extend his observation beyond that distance

within which a car proceeding at a customary and reason-
ably safe rate of speed would threaten his safety. Taking
the effect of the evidence as a whole, one thing which is
tolerably clear is that, if the car had been running at a
reasonable rate of speed, and proper warning had been
given, Snell would not have been injured. All else is
more or less in doubt. The evidence pro and con was to
be weighed, and the tribunal for that purpose was the
jury, not the court upon the motion." All of these ob-
servations apply with great force to the case before us.
"Failure to look and listen before crossing the track of an
electric railway in a public street where cars have not the
exclusive right of way is not negligence as a matter of
law." *Roberts v. R. R.*, 23 Wash. 325 (63 Pac. Rep. 506,
54 L. R. A. 189); *Chicago R. R. v. Robinson*, 127 Ill. 9 (18
N. E. Rep. 772, 4 L. R. A. 126, 11 Am. St. Rep. 87);
*Garrity v. R. R.*, 112 Mich. 369 (70 N. W. Rep. 1018, 37
L. R. A. 529); *Newark R. R. v. Block*, 55 N. J. Law, 605
(27 Atl. Rep. 1067, 22 L. R. A. 374).

In the last cited case it is said of the foot passenger's
duty to look out for approaching cars: "But the request
before us brings into question the extent to which one
crossing the roadway on foot must extend his observation.
Its claim is that such observation must be extended to any
approaching car, no matter how distant. But this is ob-
viously an exaggerated notion of the duty required. The
most prudent man would never suppose himself required
to thus observe. * * * Prudence doubtless requires
any one about to cross a railroad track to use his eyes to
observe any approaching car within his vision; but, as has
been shown, prudence does not require one crossing the
track of a street railway to extend his observation to the
whole line of track within his vision, but only to such dis-
tance as, assuming the required care in their management,
approaching cars would imperil his crossing." Dunbar, J.
in *Smith v. Union Trunk Line, supra*, says: "Of course, the

pedestrian must use ordinary care to avoid collision, and the care must be proportioned to the danger to be avoided. But the laws must look at human minds just as they exist, with all their frailties, their inclination to abstract thought, and absent-mindedness." See, also, *Tesch v. R. R.*, 108 Wis. 593 (84 N. W. Rep. 823, 53 L. R. A. 618); *Consolidated Co. v. Scott*, 58 N. J. Law, 682 (34 Atl. Rep. 1094, 33 L. R. A. 122, 55 Am. St. Rep. 620).

Whether an injured party could have avoided the injury by moving from the track more quickly, is for the jury to determine. *Hicks v. R. R.*, 124 Mo. 115 (27 S. W. Rep. 542, 25 L. R. A. 508). Whether one who has looked or listened for moving cars at a crossing should have renewed his observations at a point nearer the track, is for the jury. *Newhard v. R. R.*, 153 Pa. 417 (26 Atl. Rep. 105, 19 L. R. A. 563). In the *Walker Case, supra,* the Minnesota court says of the act of the plaintiff in stepping upon the track where she was injured: "If she then knew that the car was running at forty miles an hour, and was disregarding her signals to stop, it might be said as a matter of law that she was negligent in going forward; but we cannot, without weighing diverse speculations and usurping the functions of the jury, decide upon the effect of the headlight upon her vision, or the reasonableness of her necessarily instantaneous views at the time. It may have been extremely difficult to discriminate between the effects of the headlight and decide upon its probable distance from her, or to calculate upon the speed of the car; and it must not be forgotten, either, that the judgment of the plaintiff in these respects may have been influenced by the reasonable supposition that the car was running at its proper speed, and would stop upon the signals given for her benefit." If the injured party was guilty of no culpable negligence, the mere fact that he might have avoided the injury by greater diligence will not defeat his recovery of damages. *Fero v. R. R.*, 22 N. Y. 213 (78 Am. Dec.

178); *Besiegel v. R. R.*, 34 N. Y. 622 (90 Am. Dec. 741); *Brown v. R. R.*, 32 N. Y. 597 (88 Am. Dec. 353). "The fact of negligence is very seldom established by such direct and positive evidence that it can be taken from the jury and pronounced upon as a matter of law." *Ireland v. R. R.*, 13 N. Y. 533. "It is not true that a traveler is guilty of culpable negligence as a matter of law if he does not stop to listen or look up and down the track before he goes over a crossing. * * * Whether such an omission is culpable depends upon the facts and circumstances of each particular case." *Ernst v. R. R.*, 35 N. Y. 9 (90 Am. Dec. 761).

A traveler driving across a street railway looked in one direction, but did not look in the other, from which a car was approaching, until the heads of his horses were over the near rail, and he was unable to advance or retreat in time to avoid the collision. Upon this state of facts the Minnesota court, after a careful review of the law, held the question of contributory negligence could not be disposed of as a matter of law. *Shea v. R. R.*, 50 Minn. 395 (52 N. W. Rep. 902.) A similar proposition is affirmed in *Guggenheim v. R. R.*, 66 Mich. 150 (33 N. W. Rep. 161). In Massachusetts, where it has been said (*Ernst v. R. R.*) *supra*) "no undue rigor of intendment is suppo ed to prevail on this subject," the same principle is well established, even as to the ordinary railroads. The view of a railway was somewhat obscured to one approaching the crossing, but at a point thirty feet from the rails the track could be seen for the distance of a half a mile. A woman drove to the crossing as a freight train was going by, and, waiting until she supposed the last car to have passed, drove on, without looking up the track, and was run down by cars which had been purposely detached from the freight train, and were following it of their own momentum. Had she looked at any point within the thirty feet, she could have seen the approaching cars, and avoided

injury; and she gave as her only excuse for not doing so that she did not suppose that one train would follow another so closely. It was held that the company was not entitled to a peremptory instruction that plaintiff was guilty of contributory negligence, and that the question must be left to the jury. *French v. R. R.*, 116 Mass. 537. It is there said that, where the facts of a crossing accident are undisputed, it still remains, except in extraordinary cases, a question for the jury whether there is contributory negligence. *Robbins v. R. R.*, 165 Mass. 30 (42 N. E. Rep. 334); *Benjamin v. R. R.*, 160 Mass. 3 (35 N. E. Rep. 95, 39 Am. St. Rep. 446); *Chaffee v. R. R.*, 104 Mass. 115; *Gaynor v. R. R.*, 100 Mass. 208 (97 Am. Dec. 96). In the *Chaffee Case* it is said that a failure to look for a train at the moment of crossng is not negligence as a matter of law—a holding which is directly contrary to the position of the majority in this case. In New Jersey the reasonable rule is announced that, where a traveler and a street car are approaching a common point of crossing, if the car is at such a distance that the traveler using reasonable care, may first cross, he has the right of way. *N. J. E. R. Co. v. Miller*, 59 N. J. Err. & App. 423 (36 Atl. Rep. 885). This case is affirmed in principle, though not upon parallel facts, by our own case of *Correll v. R. R.*, 38 Iowa, 120, where a herd of cattle being driven over a crossing were injured by a passing train moving through a town at an unlawfully high rate of speed. To the claim that there was contributory negligence on the part of the party in charge of the cattle, we said: "This was primarily a question for the jury. * * * It seems reasonably probable that, if defendant's train was moving at a lawful rate of speed, the person in charge of the stock would have been able, by the efforts made by him, to prevent the injury; and that his conduct would have been consistent with due care on the hypothesis that he supposed the train to be moving at a lawful rate of speed. This he had a right to assume

until the contrary appeared. Whether he was advised of the true speed of the train in time to act differently from what he did is doubtful, to say the least." We also said in *Artz v. R. R.*, 34 Iowa, 153: "If the view of the railroad, as the crossing is approached on the highway, is obstructed by any means so as to render it impossible or difficult to learn of the approach of a train, or there are complicating circumstances calculated to deceive or throw a person off his guard, then whether it was negligence on the part of the plaintiff or person injured, under the particular circumstances, is a question of fact, and not of law." *Moore v. R. R.*, 102 Iowa, 597. In the cited case plaintiff looked at a distance of sixty feet from the track, but did not look again. At a distance of forty feet, had he looked, he must surely have seen the approach of the engine which injured him; but even under such circumstances we held it error to direct a verdict for the defendant. Indeed, it has often and very justly been held that, where the negligent conduct of a defendant is of such gross character as to indicate a wanton or reckless disregard of injury resulting to others, contributory negligence of the plaintiff will not relieve the wrongdoer from liability for damages. See Cooley on Torts (2d Ed.) 810; Beach on Contributory Negligence (2d Ed.) sections 61-64; *Brannen v. R. R.*, 115 Ind. Sup. 115 (17 N. E. Rep. 202, 7 Am. St. Rep. 411) *Florida Southern Ry. v. Hirst*, 30 Fla. 1 (11 South. Rep. 506, 16 L. R. A. 631, 32 Am. St. Rep. 33); and cases thereunder cited. This principle has been applied to the act of a railway company running its trains at a prohibited rate of speed through a city. *L. S. & M. S. R. R. Co. v. Bodemer*, 139 Ill. 596 (29 N. E. Rep. 692, 32 Am. St. Rep. 218).

If such is the law as applied to travelers crossing a railroad, and if, as must be conceded, the rule is still less stringent as applied to street railways, there seems no possible escape from the conclusion that the district court

erred in directing a verdict. The courts should exercise scrupulous care not to invade the province of the jury. While the right to direct or set aside the verdict under appropriate circumstances is one which cannot be safely surrendered, the occasions for its proper exercise are very few. It is by no means a settled proposition that the united judgment of twelve average jurors upon a question of fact unmixed with law is any less apt to be right than that of a court, however learned or eminent. This is peculiarly true in respect to questions of reasonable care. Whether a person has exercised reasonable care under any given state of circumstances is not a question requiring expert knowledge or high scientific or legal attainments. It is a question which the average juror coming in daily contact with the men and circumstances of ordinary every day life can far better understand and solve than can one who lives in the realm of books and breathes the atmosphere of pure theory. Whether an act is that of a reasonably prudent man is not to be found by going to the decisions or text writers, but by consulting the habits and conduct of average men. The question, as has been said in *Ernst v. R. R. supra*, is, "What would a majority of men of common intelligence have done under like circumstances?" And who so competent to answer this question as a jury made up of such men? Says the New York court in the case last cited: "Even among the cases which have been held so plain as to justify a nonsuit, there have been few in which the judges have not themselves disagreed, and the inquiry naturally occurs to the mind whether we are less liable than jurors to err on questions of pure fact pertaining to the ordinary affairs of life. Our law is framed upon the theory that upon such questions the citizen can rely with more security upon the concurrence of twelve jurors than on the majority vote of a divided bench. * * * But we have had occasion recently to hear nonsuits of this kind justified on the novel ground

that, unless the fact be determined one way by the judge, it will be sure to be determined the other by the jury. The correctness of judicial opinions on mere questions of fact may well be distrusted when we find them confessedly opposed to the common sense of mankind." Expressing the same thought, the Massachusetts court, in the *Gaynor Case*, remarks, "It is the judgment and experience of the jury, and not of the judge, which is to be appealed to." See, also, discussions by Chief Justice Cooley in *Detroit, etc., R. R. v. Van Steinburg*, 17 Mich. 120.

Tried by the standard of principle as well as by the precedents, the plaintiff should have been allowed to go to the jury. In my opinion, therefore, the judgment below should be REVERSED.

DEEMER, J., concurs in the foregoing dissent.