NILS ERICKSON *vs.* ST. PAUL & DULUTH RAILROAD COMPANY.

October 18, 1889.

Railway—Workmen near Track—Duty to Signal Approach of Trains.
The plaintiff and others were lawfully, and with defendant's knowledge, engaged in grading for a new railway track alongside of and parallel to defendant's original or main track. The ordinary duties of the work frequently required them to be in such close proximity to defendant's original track as to be liable to be struck by passing trains. It had been the uniform practice of those operating trains on the railroad to give these workmen warning of their approach by signals. *Held,* that the defendant owed the workmen the duty of active vigilance in giving them proper signals of the approach of trains, and that they had, under the circumstances, the right to rely on the continued performance of this duty, without the necessity, while engrossed in their work, of themselves keeping a constant lookout for approaching trains. The duty of defendant in this respect would be the same whether the workmen were in its employment or that of its contractor.

Same — Signal not Given or Unheeded — Duty to Stop Train.—It would not ordinarily be the duty of those operating a train to stop it or slack its speed, provided they gave the proper signals. They would have a right to presume that the workmen would heed the warning, and remove from the place of danger. But if the trainmen saw that they did not hear the signals, and were making no effort to escape, it would then be their duty to stop the train, if there was still time to do so, before injuring them.

Appeal by defendant from an order of the district court for St. Louis county, *Holland,* J., presiding, (acting for the judge of the 11th district,) refusing a new trial after verdict of $6,000 for plaintiff.

*James Smith, Jr.,* and *W. A. Barr,* for appellant.

*John Jenswold, Jr.,* for respondent.

MITCHELL, J. This was an action to recover damages for personal injuries caused by the alleged negligence of those operating a train on defendant's railway. As the settled case does not purport to contain all the evidence, many of defendant's assignments of error cannot be considered. The only question really open for consideration is whether, upon the facts disclosed by the record, there was positive error in the instructions given to the jury at the request of the plaintiff, referred to in the sixth assignment of error. It appears from the evidence contained in the record that plaintiff was in the employment of a contractor who had the job of grading for defendant a side track from Duluth westward alongside of and parallel with the old or main track. The work of plaintiff and his fellow-laborers was shovelling dirt in loading and unloading dump-cars. The manner of doing the work was to load these cars at one point, and then haul them by team on a temporary or work track laid on the new grade, and unload them where a fill was to be made. This work track was about two feet wide, and the distance between it and the main track, from outside to outside, was, by actual measurement, four feet seven inches. While this work had been going on the main track was in constant use by trains, which were passing almost hourly during the day. While it does not appear that the work of these graders required them to actually go upon the main track, yet we think it conclusively appears from the facts in evidence that from time to time, as occasion called for it, their work required them to be in such dangerous proximity to it as to be liable to be struck by passing trains. The engineer of the train which injured plaintiff says that the men shovelled on both sides of the dump-cars standing on the work track. It also appears in evidence that when trains came along the men were in the habit of running in between the dump-cars, sometimes one way and sometimes another, and this is not contradicted. It also appears that standard cars, such as were used on defendant's road, project beyond the rail two feet and a half. It does not appear how far the dump-cars projected beyond the rail, but when it is considered that the total space between the tracks was only four feet seven inches, and that the cars used on the railway occupied two and

one-half feet of this, leaving the remaining space at most only about two feet, it is apparent that men engaged in shovelling on that side, and intent on their work, would, unless warned to get out of the way, be in imminent danger from passing trains. This is emphasized by the conceded fact that on all previous occasions it had been the uniform custom of those operating trains to give signals of warning to the men by blowing a whistle or ringing a bell on approaching the place where they were at work. No one was appointed to keep a lookout for approaching trains, but, as two of the workmen express it, " every one had to look out for himself." This, of course, is to be construed in connection with the undisputed fact, already referred to, that it had been the uniform custom of the trainmen to give a signal of warning on approaching a gang of these graders. The employes running the trains knew that these men were, and had for some time been, engaged in this work alongside the road, and of course the men were equally well aware that trains were frequently passing. The country was level, and the view unobstructed, so that, had they looked, the workmen could see a train approaching from the east at a distance of a mile and a half, and the engineer and fireman on the train had equal facilities for seeing the workmen. On the day of the accident the men had loaded a train of dump-cars, and the teamster had started to haul it, when, at a point about 1,500 feet west of " West Duluth station," a car near the middle of the train became derailed, the wheels getting six or seven inches off the rails on the side toward the main track, and the body of the car tipping or careening over still further in the same direction. The foreman ordered the men to get around the car, and lift it back on to the track. Some of them went to the ends and some to the sides of the car. Plaintiff was one of those who went to the side next the main track, and took hold about the middle of the car to help to lift it, his back being turned towards the main track. While the men were thus engaged, one of their number discovered a train approaching from the east, and then distant only the length of seven or eight rails. He gave the alarm, whereupon there was immediately a hurried rush of the men on that side to get out of danger. They all succeeded except plaintiff, who, being near the middle of the derailed car, was unable to reach an opening

between the ends of the cars until they were filled by others, and, owing to the inadequate space between the passing train and the dump-car, was struck by some part of the moving cars, (probably the projecting step of a passenger coach) and very seriously injured. The engineer and firemen on this train saw these men at work around the dump-cars almost immediately on leaving West Duluth station, and the fireman, whose duty it is to ring the bell when necessary, noticed that they were nearer the main track than usual, but did not notice what they were doing, and did not know that a car was derailed. The train was not slowed up, but passed the men at its usual rate of speed, which was from 20 to 23 miles an hour. So far the facts disclosed by the record are virtually undisputed. The only question upon which there was any substantial conflict of evidence was as to whether those operating the train signaled its approach; they swearing positively that they did do so by ringing the bell, while plaintiff and some of his fellow-laborers swore with equal positiveness that · they did not hear it, and that they could and would have heard it if it had been rung. While we appreciate the weakness of negative testimony on such a question, yet we think that, even if the " case " purported to contain all the evidence we would be compelled to hold that the question was one for the jury.

The negligence complained of consisted—*First*, in the alleged failure of the trainmen *to give a signal, warning the workmen of its approach; and, second, their failure to make any effort to stop the train before it struck the plaintiff.*

As· bearing upon the first, the court gave to the jury plaintiff's third and fifth requests, which were as follows: "The plaintiff had a right and license to be along the defendant's track where work was necessary· to be done, and as such was not necessarily bound to keep a constant lookout for approaching danger. He was there lawfully, and as such the defendant owed him active vigilance and care, and plaintiff had a right to rely upon defendant's diligence to protect him; and it is for you to say if plaintiff might under all the circumstances rely on being given timely warning of approaching trains." Also: "Plaintiff was rightfully at work near the track. It was defendant's employes' duty to keep a vigilant lookout for him. If they

knew thereof, and failed to do so, it is negligence." As nearly as we can understand appellant's brief, the gist of his objections to these instructions is that they held that the defendant owed the plaintiff the duty of active vigilance in protecting him from approaching trains, and that the plaintiff was not bound to keep a constant lookout, but might rely on defendant's diligence to protect him. The instructions are general in their terms, and not at all specific, especially as to what vigilance or diligence defendant, under the circumstances, owed plaintiff in order to protect him against passing trains; but if defendant thought that for that reason they were liable to be misunderstood, and desired them further explained or limited, he should have called the attention of the court to the fact. He cannot now take advantage of any such objection under a mere general exception to the charge. The general propositions of law embodied in the instructions are correct, as applied to the facts of the case. Although in the employment of a contractor, and not of defendant, the plaintiff was lawfully at work along defendant's railroad, with its knowledge, and by its authority. The character of his work was such that, under the facts, it owed him the duty of active vigilance to the extent of giving him signals, by way of warning of approaching trains, and he had a right to rely on its doing this, instead of keeping a constant lookout for himself, at least in view of the fact that the company had adopted and practised the custom of giving such warnings, and which he had every reason to suppose would be continued. Had plaintiff been employed by the defendant itself to work on its track there probably would have been no question raised that defendant would have owed him this duty of active vigilance, and that he would have had the right to become engrossed in his work to such an extent as not to notice the approach of trains, and to rely upon the performance by the defendant of its duty to give him signals to warn him of the fact. But it can make no difference in principle whether a person be at work immediately upon the track or so near it as to be struck by passing trains. Neither does this duty depend, as appellant seems to claim, upon the fact that the person is a servant of the company, and the employes running the trains his fellow-servants. It is a duty growing out of the fact that he is lawfully

working there under the authority and with the knowledge of the company, and depends upon the general principles of law requiring the exercise of ordinary care not to injure another. Of course the defendant could not have foreseen, and was not bound to anticipate, the accident of the derailment of this car; and if this had been the only cause and occasion of plaintiff's being in dangerous proximity to the track, this duty of giving warning of approaching trains would not have devolved upon the defendant, at least in the absence of actual knowledge on part of those operating the train that the men were on or near the track. But for reasons already given we think the evidence shows that the duties of the ordinary work of the men called them so near the track as to make warning of approaching trains a duty of defendant.

As bearing upon the second alleged ground of negligence, the court, at the request of plaintiff, charged the jury: "If the engineer or person in charge of the train which struck plaintiff, in approaching him there at work, saw him there at work in a dangerous position close to the track, and that he made no attempt to avoid the approaching train, it was his duty not only to warn plaintiff by the usual signal, but also, if there was time enough, to stop the train, then not stopping the train was negligence, and under those circumstances it is no defence to say that plaintiff was guilty of contributory negligence." Of course the mere fact that the engineer failed to stop the train after he saw the plaintiff, even if there was time to do so, would not render the defendant liable, provided the proper signals of warning had been given. The employes of the company would have a right to presume that the men had the faculties to appreciate the danger of their situation, and upon hearing the signal would use them accordingly. But no degree of negligence on part of a man would justify an engineer in running over him. Hence if, after giving the proper signal, the engineer sees that a person in a position of imminent danger does not hear or comprehend the signals, and hence is making no effort to escape, it is his duty to stop his train if there is still time to do so before running over him. Not to do so would be a wilful and wanton act, against which no amount of negligence on part of the person injured would be a defence. Although not fortunately expressed, we

think this is all that the instruction complained of amounts to, and that this is the meaning the jury would naturally give to it. There is very little evidence in the record to which such an instruction is. applicable, but as it is substantially correct as an abstract proposition of law, and as it does not appear that all the evidence is before us,. we cannot say that giving it was error.

The sixth and last instruction complained of is but an elaborate statement of the familiar principle that where a person through the negligence of another is suddenly placed in a position of great and imminent danger, in which he is compelled, in an instant, and under the influence of excitement and fear, to decide upon and choose the means of escape, he is not required to exercise the degree of care which a person would if possessed of coolness and presence of mind, but only such care as would be exercised by persons of ordinary prudence placed in the same circumstances, and under a like necessity of immediate decision and action.

We are of opinion that upon the whole record the order denying a, new trial must be affirmed.