C. H. SOURS v. GREAT NORTHERN RAILWAY COMPANY.[1]

October 25, 1901.

Nos. 12,838—(202).

**Contributory Negligence of Servant.**

> A railway employee is guilty of contributory negligence which will
> defeat his right to recover for injuries sustained in the course of his em-
> ployment where such injuries substantially result from dangers so obvi-
> ous and threatening that a reasonably prudent man, under similar cir-
> cumstances, would have avoided them, if in his power to do so, due
> regard being had to all of the circumstances of the particular occasion.

**Same.**

> Evidence examined and considered in the case at bar. *Held*, as a
> matter of law, that negligence on the part of plaintiff sufficient to pre-
> clude recovery was conclusively imputed and established.

Action in the district court for Ramsey county to recover
$15,000 damages for personal injuries. The case was tried before
Otis, J., and a jury, which rendered a verdict in favor of plaintiff
for $7,500. From an order denying a motion for judgment not-

[1] Reported in 87 N. W. 766.

withstanding the verdict or for a new trial, defendant appealed. Reversed and new trial granted.

*C. Wellington*, for appellant.

*S. C. Olmstead*, for respondent.

COLLINS, J.

This is a second appeal in a personal injury case. See 81 Minn. 337, 84 N. W. 114. A few of the facts were there stated, and, among others, that the accident occurred about dark, and that plaintiff alleged a usage or custom of placing a lantern upon the front end of a "cut" of caboose cars as they were dropped down into and through the "gravity" yard in which he was injured.

When the case was again brought to trial before a jury, it was conceded that when the accident happened it was not dark enough to prevent the plaintiff from seeing the approaching cabooses as they came down the yard, nor was it dark enough to require a light upon their front; in other words, it stood admitted that the accident was in daylight, and that proof of the usage or custom as to a lantern was immaterial. The trial proceeded with this change in the situation. Therefore, to fix a charge of negligence upon defendant corporation, it became necessary to establish the alleged usage or custom to station a man upon the front, whose business it was to control the defendant's cars, and to warn such of defendant's employees as might be upon the tracks engaged in their daily labors of the approach thereof.

At this time it may be advisable to say that on the former appeal we expressed no opinion on the question of contributory negligence. As a matter of fact, the principal arguments of counsel were then confined to the contention of defendant that there was a total absence of evidence tending to show its negligence. It was upon this contention that the case was disposed of, the conclusion being that testimony was improperly excluded, which, if received, would have had a tendency to show defendant's negligence. This conclusion was summed up in a single paragraph, in which it was said that:

"If plaintiff failed to establish defendant's negligence at the trial, or if he did not free himself of the charge of contributory

negligence, and an answer to the question referred to would have done either of these things, defendant's counsel is not in position to urge this particular failure  *  *  *  in favor of his client."

That opinion cannot be construed as holding, or even intimating, that we passed upon the question of plaintiff's contributory negligence in his favor. It left that issue open.

Upon the second trial, as might be expected, much testimony was introduced in reference to the existence or nonexistence of the alleged usage or custom, and it is argued here on the part of defendant that there was again a total failure to show any such established usage or custom upon which the plaintiff had a right to rely. It is unnecessary for us to discuss the purport and sufficiency of this testimony, for we are of the opinion that on this branch of the proofs a case was made for the jury.

We therefore come at once to the claim that the plaintiff was guilty of such contributory negligence as would preclude recovery. Our conclusion is that he was, and is based wholly upon his own testimony, which was clear and candid. He had been employed in this yard about ten years; was thoroughly familiar with it, and with the methods of operating the same. His headquarters were at what was known as the "yard office," on the south side of several tracks running about east and west. Going northerly from the office there were, first, four or five tracks used for switching purposes, and then came two freight tracks. The first was for west-bound freight trains; the second, for east-bound. North of these were two tracks for passenger trains. The switching track nearest the west-bound freight track, south of it seven feet eight inches, was designated as "No. 2," and it was on this track that plaintiff was injured. It was about one hundred feet from the yard office to the west-bound freight track, and about three hundred feet to the west of the office was the Western Avenue bridge, an overhead highway crossing. Six hundred feet to the west of this bridge—say nine hundred feet from the office— was the Como station house or depot, in plain sight.

As stated in the former opinion, this was a gravity yard, the descent being towards the east; that is, from west of the bridge to a point east of the office. Just before the accident, plaintiff,

while at the office, received a telephone message from the assist-
ant yardmaster saying that he wished him to get a lantern which
had been left the night before, light it, and have the switch tender
deliver it to Mr. Ward (conductor of a transfer freight train
which was on its way west) as he passed on the train; and that
he would have to hurry if he got the lantern to Ward. The usual
station of the switchman at this time of day was at a switch
about three hundred feet west of the office, and the train in ques-
tion always stopped at Como, nine hundred feet away, for orders,
as the plaintiff well knew. He lighted the lantern, stepped to the
door, looked in the direction of the switch tender's station and
then started with the lantern himself. He testified that he did
not know where the switchman was at this time. Plaintiff ran
across the tracks, and stopped between track No. 2 and the west-
bound freight, on which Ward's train was then approaching,
running westerly ten or twelve miles an hour. This train was
about three hundred feet in length, and the engine reached this
point about the time plaintiff stopped. Ward was on the last car,
and plaintiff saw him immediately.

The plaintiff, as before stated, was perfectly familiar with the
methods of operation in this yard, and as he went out of the
office looked up towards the Western Avenue bridge, and saw a
switch engine, which had been in upon what was known as the
"caboose track,"—that is, a track where cabooses were tempora-
rily stored,—and also saw cabooses which it had pulled out for
the purpose of "shunting" them down the yard to a point easterly
of where he stood, using such of the switch tracks, including No.
2, as might be needed. He further testified that he looked up in
this same direction after stopping between track No. 2 and the
west-bound freight, but upon cross-examination modified this by
saying that he had no recollection as to whether he looked or not,
when standing between the tracks. He admitted that he knew
that they were about to "shunt" cabooses into the yard, and that
they were as liable to drop down on No. 2 as upon any other track.

Plaintiff was struck by the leading caboose of two which were
being sent to the east at a speed of five or six miles an hour, to
be used in making up freight trains. On being questioned on this

point, plaintiff could not say how far he was from No. 2 track when struck, but as a matter of fact he was standing so close that he was thrown directly between the rails thereof, the wheels of the caboose passing over his left leg, and causing most of the injuries complained of. The rear car of the freight train was about opposite plaintiff when he fell, so that he must have been standing in this dangerous place for nearly half a minute, simply endeavoring to attract Ward's attention to the lantern, and having nothing else to do but to take care of himself. Ward saw the cabooses approaching, and tried to call plaintiff's attention to them. The latter noticed Ward's signals, but did not understand why they were given.

The space between the moving cars when directly opposite— that is, the space between the freight cars on the west-bound freight track and the cabooses on No. 2—as they passed each other was three feet seven and 7–8 inches in the clear, and, indisputably, this space was a place of safety if plaintiff but chose to occupy it. He could have stood there unharmed, could have been noticed easily by Ward, and would have been in equally as favorable a position to hand over the lantern, if not a better one. Nor can it be disputed that, had plaintiff looked to the west while he stood waiting for Ward, he must have seen the cabooses approaching upon No. 2 track, for at no time after he reached this point were they to exceed one hundred and fifty feet distant. That he should have looked is obvious, for, in addition to his general knowledge of the manner of operating the yard, he admittedly had reason to expect cars to be sent down on any of the switching tracks at any time, and he also knew they were about to drop cabooses down through the yard when he started with the lantern. But at the trial he finally admitted that he had no recollection as to whether he did or did not look in the direction from which danger was imminent after he had got beyond track No. 2.

It is to be observed that plaintiff was not acting in an emergency, for he had time to cross the tracks and take his position by the time the engine reached that point. The person to whom he was to deliver the lantern was upon the rear car,

about three hundred feet distant. Plaintiff was in full possession of his faculties, and acted with deliberation. There were no exigencies in the situation, no sudden fright or bewilderment, which might excuse him from observing ordinary care and caution. He was not hastily compelled to choose between the place of safety intermediate between the two tracks and that of danger, which he took, within two feet at most, of the south rail of track No. 2. His duty in this particular instance may have required him to cross the tracks,—always dangerous work,—and to stand in close proximity to a moving train, and, possibly, equally as close to a cut of cars upon an adjacent track; but in doing this reasonable and ordinary care for his own personal safety was demanded, for no railway employee is justified in performing his dangerous work in a heedless, unobservant manner, and, if injury result under such circumstances, no recovery can be had. These propositions are firmly established in all courts.

We have given no weight to the fact that it was unnecessary for plaintiff to cross the tracks for the purpose of delivering the lantern to the conductor. He could have handed it to the switch tender, as directed, or he could have taken it to Como, nine hundred feet distant, where, as he knew, the transfer freight waited for orders. In fact, it appeared from the testimony that Ward made no attempt to take the lantern, did not intend or expect to receive it from any one at that point, and supposed he was to get it at the station, or upon his return, very soon afterwards.

The accident was a very unfortunate one for the plaintiff, but to permit him to recover would be to hold that railroad employees, while working among and around tracks, may omit to use their eyes, and may rely entirely upon signals, such as shouts, to protect them from injury. It would allow such employees to close their eyes to obvious, well-known, and appreciated dangers, and to rely absolutely upon the sense of hearing, although they might be partly deaf,—as was the plaintiff.

Such a rule would relieve the employee from all care and responsibility (except listening for shouts), and would make his em-

ployer an insurer of his personal safety whenever signals of this character were not given.

The plaintiff was engaged in a hazardous business, and assumed all ordinary risks of his employment when he entered into defendant's service. The well-settled rule is that a railway employee "is guilty of contributory negligence which will defeat his right to recover for injuries sustained in the course of his employment where such injuries substantially resulted from dangers so obvious and threatening that a reasonably prudent man, under similar circumstances, would have avoided them, if in his power to do so, due regard being had to all the circumstances of the particular occasion." This doctrine has repeatedly been approved and applied in this court; quite recently in Roskoyek v. St. Paul & D. R. Co., 76 Minn. 28, 78 N. W. 872. See also Stacklie v. St. Paul & D. R. Co., 73 Minn. 37, 75 N. W. 734,—both cases in which railway employees were injured while engaged in the performance of daily duties.

Plaintiff's counsel has relied upon Jordan v. Chicago, St. P., M. & O. Ry. Co., 58 Minn. 8, 59 N. W. 633. The first paragraph of the syllabus of that case is somewhat misleading, because it does not fully and fairly state the doctrine approved by the majority, but not concurred in by the writer of the opinion, the late Chief Justice GILFILLAN. The majority held that the rule which requires one to look and listen before going upon a railroad track is not applicable in the case of a person who is employed in a railroad yard, whose duties frequently make it necessary for him to go upon the tracks, and where the exigencies of these duties *"may call upon him to do so without premeditation or time or opportunity to ascertain if it is dangerous to do so."* It was said that the acts of such a person, when performed under such circumstances, are not per se negligence.

The gist of what was there written lies in the words above quoted and italicized. In the case at bar the exigencies of plaintiff's duties, even if we concede that it was incumbent upon him to cross the tracks to meet the approaching train, did not require him to do so without premeditation, or without an abundance of time, or without every opportunity to notice whether it was

dangerous for him so to do. Nor did they require him to stand in the place where he was injured. There was no emergency in the present case, and it is not at all like the one relied on. The rule there laid down does not apply. We are compelled to hold that, as a matter of law, plaintiff's negligence was conclusively imputed and established.

Order reversed, and new trial granted.