HENRY KRAMER v. NORTHWESTERN ELEVATOR COMPANY.[1]

January 22, 1904.

Nos. 13,682—(192).

**Conversion—Complaint.**

Complaint construed, and *held* to state a cause of action in conversion, and not an action for damages growing out of a breach of a contract of bailment.

**Warehouseman—Receipts.**

If a warehouseman receives grain for storage, and issues memorandum slips or tickets, not in accordance with the statute (G. S. 1894, §§ 7716, 7717), and the bailor in good faith deposits wheat and accepts such tickets, he is not deprived of his right to the property, or the value thereof. Such memorandum slips are properly admitted in evidence in connection with evidence to identify and make them certain to prove the fact that the wheat was actually delivered. But if the bailor had knowledge of the fact that the agent's authority was limited to the issuance only of such certificates as are prescribed by statute, and accepted a form of ticket which does not provide for storage charges, for the purpose of avoiding them, then such transaction was not necessarily of such fraudulent character as to deprive the bailor from recovering the wheat, or its value, although he may be chargeable with storage charges to the same extent as he would have been under the terms of the regular receipt.

**Evidence—Bill of Particulars.**

To warrant the court in refusing to receive any evidence in support of the complaint upon the ground that respondent had not complied with the order of the court to serve a bill of particulars, it should clearly appear that respondent's attorney had notice of such order, or had waived notice thereof.

**Remark of Trial Judge.**

While ruling against appellant's objection to certain evidence offered on the part of respondent, the trial judge made the remark: "I prefer, counsel, that if there is to be any stealing done on technicalities that the Supreme Court say so." *Held* error, for the reason that it insinuated appellant was not engaged in a legitimate defense, but was intending to commit larceny of the wheat in question. The effect produced upon the minds of the jurors must have been such that the subsequent caution of the court during the charge to the jury was powerless to remove the im-

[1] Reported in 98 N. W. 96.

pression and leave the jurors unprejudiced to determine the main question at issue—whether respondent had delivered the wheat, and, if so, had it been paid for?

Action in the district court for Yellow Medicine county to recover $844.20, and interest, for the conversion of wheat alleged to have been stored with defendant. The case was tried before Powers, J., and a jury, which rendered a verdict in favor of plaintiff for the sum demanded. From an order denying a motion for a new trial, defendant appealed. Reversed.

*John R. Van Derlip,* for appellant.

*A. J. Volstead* and *W. A. McDowell,* for respondent.

LEWIS, J.

The complaint alleged that appellant was a corporation engaged in the business of receiving for storage and storing wheat and other grains, as a bailee, in its warehouse at Clara City; that it was appellant's custom to receive wheat for storage under the agreement that the parties storing it might at any time thereafter, on demand, sell the wheat to appellant at the market price on the day of such demand; that between February 1, 1889, and April 15, 1901, respondent delivered to and stored in appellant's warehouse twelve hundred sixty bushels of wheat, to be held by appellant as respondent's bailee, subject to the understanding and agreement that appellant would at any time, on demand, buy the grain at the then market price; that on December 16, 1901, respondent demanded an accounting of the wheat, and offered it for sale to appellant, but appellant refused to either buy or account for it, whereupon respondent demanded a return of the wheat, which was refused; that on the day of the demand the wheat was worth the sum of $844.20; and that prior to that date appellant had converted the wheat to its own use, and to respondent's damage in the above-mentioned amount.

The answer was a general denial, except that appellant admitted it was a corporation conducting a warehouse at Clara City for storing grain.

In support of the allegations of the complaint, respondent produced his two sons and a hired man who testified that within the time mentioned in the complaint they hauled for respondent from his farm, a

distance of about five miles from the village, and delivered to appellant's elevator, a large quantity of wheat, and, as each load was delivered, appellant's agent gave them a memorandum slip showing the number of bushels in each load. Respondent testified that he kept these slips, with others of a similar character, and that from time to time, as he required the money, it was his practice to give them to the agent and get the money. In support of this testimony, various wheat tickets, calling for the number of twelve hundred fifty bushels, were offered and received in evidence; and respondent testified that he had delivered the wheat represented by the tickets, and had made a demand for it, but had never been paid the price of the wheat, as demanded. Appellant objected to the introduction of the tickets upon the ground that they were not such as were required to be issued by warehousemen, under the provisions of G. S. 1894, §§ 7716, 7717, and, by the cross-examination of respondent's witnesses, offered to prove that the wheat delivered at its elevator by respondent was taken under an arrangement with appellant's agent whereby respondent was to receive a memorandum slip, instead of the regular warehouse receipt provided for by the statute, in order that respondent might be relieved from paying storage on his wheat. The offer was objected to, and the objection sustained.

Appellant also objected to the introduction of any evidence under the complaint tending to show a conversion of the wheat, for the reason that the cause of action as pleaded was not in conversion, but was an action for damages for breach of a contract of bailment, and upon the further ground that a bill of particulars had not been served. The court submitted the case to the jury to determine the amount of wheat respondent had delivered, and its value at the time demand was made for its purchase. The jury returned a verdict for respondent to the amount of the market price of the wheat on the day of demand. The following questions are raised on this appeal.

1. Does the complaint state a cause of action in conversion? We think so. While the contract of bailment is set forth, it may be treated in the nature of an explanation of the manner in which the wheat was placed in appellant's possession. The essential features of the complaint are that respondent was the owner of the wheat; that he delivered it to appellant under an agreement that it would be stored by it,

and, at any time respondent designated, should be bought by appellant at the then market price; that respondent made demand for the purchase or return of the wheat, which demand was refused, and appellant converted it to its own use.

2. Were the tickets inadmissible in evidence in connection with testimony of the witnesses who stated they had hauled and delivered the wheat to the elevator? They were certainly admissible, having been identified by respondent, unless prohibited by statute. We are unable to give the grain and warehouse law the interpretation insisted upon by appellant. While the railroad and warehouse commissioners are given power to prescribe the forms of wheat receipts and storage tickets, and a penalty is provided for failure to comply with such requirements by warehousemen, yet it by no means follows that warehousemen may not, as between themselves and wheat owners, accept grain for storage upon such terms as they may see fit. When an agent is put in charge of a warehouse, and is vested with authority to receive wheat for storage, any owner of grain may deposit his grain upon any terms or conditions the warehouseman may establish. In the absence of fraud, it is immaterial that the agent had been instructed not to issue any slips or tickets except those provided by the statute; and it does not follow that, if the agent exceeded his authority, the warehouseman can take advantage of that fact, as against the wheat depositor, and keep the wheat.

Of course, if the bailor knew the agent's authority was limited, and that he had no right to receive grain except in accordance with prescribed forms, and entered into an arrangement with the agent for the purpose of cheating or defrauding the warehouseman, then he must suffer the consequence of his act; but appellant did not, in this case, proceed upon the theory that any fraud was perpetrated on the warehouseman to any other extent than to avoid storage charges, and that question was not fairly an issue, within the pleadings. Under the general denial, appellant might have shown that a fraudulent agreement was entered into between respondent and the agent, and that the tickets were issued in pursuance of such an agreement, and did not, in fact, represent any wheat; but no such issue was submitted at the trial, nor was there any request to present such an issue to the jury. The fact that respondent may have accepted slips for the purpose of

avoiding storage charges does not stamp the whole transaction fraud-ulent, to such an extent as to prevent respondent from recovering the wheat, or its value, if it had been actually delivered.

Under the circumstances, we do not think that the act of respondent in agreeing to accept the memorandum tickets, instead of regular warehouse receipts, conceding he knew it was irregular to issue them, is of such a fraudulent nature as would vitiate the entire transaction, and permit appellant to keep the grain. If it was the intention to re-cover from respondent for storage, such issue should have been pleaded by counterclaim.

3. Objection was also made to the introduction of any evidence upon the ground that respondent had not served a bill of particulars, in ac-cordance with the order of the court. We think the evidence is in-sufficient to show that the order of the court was ever filed in the office of the clerk, or that the attorney for respondent ever had any notice or knowledge that it had been made. To justify the exclusion of evidence at the time the case was called for trial, it should clearly appear that the order was served upon the attorney, or that such notice had been waived.

4. During the course of the trial, appellant objected to the introduc-tion of evidence of the memorandum slips upon the ground that the storage receipts prescribed by statute were the only admissible evidence, and that parol evidence could not be received to amplify or explain the tickets. The court overruled the objection, and made a gratuitous re-mark:

"I prefer, counsel, that if there is to be any stealing done on technicalities that the Supreme Court say so."

Exception was taken to the language, and the judge did not again refer to it until delivering his charge to the jury, when he said:

"Gentlemen of the Jury: During the first day of this trial and during or after argument by counsel for [appellant] upon a particular rule of evidence, the court inadvertently remarked, in substance, if there was any stealing to be done, the Supreme Court would have to say so. The court did not mean to express any opinion or to refer at all to the merits of this action, and I instruct you now, gentlemen, to disregard any such remark on the part of the court, and decide this case fairly and impar-

tially upon the evidence before you in this case.   I trust that there is no occasion for any prejudice or bias on the part of the jury, but that you will consider this case fairly upon the evidence, and endeavor to arrive at a correct and just verdict."

As already outlined, there was one distinct issue of fact before the court, upon which appellant was entitled to have the verdict of the jury, viz., did respondent deliver the wheat, as claimed, and had he, or not, been paid for it?   The evidence upon this question was not conclusively in favor of respondent.   According to appellant's books, there was evidence tending to show that respondent had been paid for nearly two thousand bushels of wheat more than actually raised on his farm during the period involved; and the nature of the tickets taken, the time they were held, and the method of transacting the business, fairly raised the question whether the wheat had been delivered, and, if so, whether it had been paid for.   Appellant was entitled to a fair and unprejudiced submission of those issues to the jury.   It does not matter that the objections may have seemed to be technical.   They were undoubtedly made in good faith, in the belief that appellant was entitled to raise the question of law thereby presented, and the effect of the court's remarks was to indicate to the jury that the presiding judge did not propose by his rulings to assist appellant in committing larceny of the wheat in question unless directed by the ruling of the higher court.   Undoubtedly the learned judge spoke hastily and without intending to influence the jury, and subsequent reflection convinced him that possibly his words might have been misunderstood, and so very properly made an effort to remove their effect in charging the jury.   But the meaning of the language used was so pointed that it is evident the effect had been produced—the jury had perceived the bent of the court's mind, and it was not possible to eradicate the impression so as to place the jurors in that unbiased and disinterested state of mind which would enable them to fairly pass upon the issues before them; and for this error a new trial must be granted.

So ordered.