HENRY KRAMER v. NORTHWESTERN ELEVATOR COMPANY.[1]

January 5, 1906.

Nos. 14,548—(78).

**Second Appeal—Law of the Case.**

An issue of law determined on an appeal is the law of the case on a second appeal of the same case; but this applies to such questions only as are decided. Questions which are raised, but not determined, may be considered on the second appeal.

**New Trial—Charge to Jury.**

The omission of material instructions, or indefiniteness or insufficiency, or even obscurity, in the charge of the court, is no ground for a new trial, unless the attention of the court was at the time specifically called to the defect, and further and more definite instructions asked for.

**Rulings on Evidence.**

Certain rulings on the reception of evidence considered, and *held* not prejudicial error.

[1] Reported in 106 N. W. 86.

Action in the district court for Yellow Medicine county to recover $844.20 for the conversion of wheat alleged to have been stored with defendant. The case was tried before Qvale, J., and a jury, which rendered a verdict in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*A. J. Volstead* and *W. A. McDowell,* for appellant.

*John R. Van Derlip,* for respondent.

ELLIOTT, J.

This case was in this court once before upon an appeal from an order denying the defendant's motion for a new trial, and a new trial was ordered. 91 Minn. 346, 98 N. W. 96. After a retrial and a verdict in favor of the defendant, the case now comes here on appeal from an order denying plaintiff's motion for a new trial.

From 1891 to 1901 the defendant corporation was conducting an elevator business at Clara City, in this state, and in various other places along the railway line. For some time prior to 1901 the plaintiff had been farming near Clara City, and had marketed practically all of his wheat at the defendant's elevator. This elevator was in charge of a party by the name of Keeley, who was the agent of defendant. Under his instructions from his principal, it was the duty of Keeley to give to parties delivering grain at the elevator a warehouse receipt and make daily reports of his business to his principal. It appears, however, that when the plaintiff delivered wheat at the elevator Keeley, instead of giving him a regular warehouse receipt, was in the habit of delivering a memorandum made on any loose slip of paper which was convenient. Plaintiff received these slips and placed them in a box in his trunk at home, and whenever he wished to sell any wheat he took the slips from the box at random and presented them to Keeley, and received the market price of the wheat at that time without any reduction for storage charges. Occasionally the plaintiff received money from the agent without delivering slips, and he then authorized Keeley, whenever he needed money, to sell enough wheat to reimburse himself for the advances thus made. There seems, also, to have been some arrangement by which the plaintiff's wheat was to be reported to the company as sold at a higher price than the market justified. Although it was Keeley's duty to make daily reports to the company of all wheat re-

ceived, he never reported grain received from plaintiff until it was actually sold and the money paid to the plaintiff out of the cash belonging to the company. At that time a warehouse receipt was made out in the usual form, showing that the wheat was received and paid for on that date, marked "Cancelled," and sent to the company with the daily report.

The complaint alleged that the plaintiff had between February 1, 1899, and April 15, 1901, delivered and deposited with the defendant twelve hundred sixty bushels of wheat, and that the defendant accepted the wheat and agreed to purchase and pay for the same on demand at the then market price; that demand had been made and that payment had been refused; and that defendant denied that any grain had been received. The answer was a general denial.

On the first trial the defendant attempted to show that these slips which were issued in the place of warehouse receipts were issued in pursuance of a general scheme devised by the plaintiff and the defendant's agent to defraud the defendant out of its storage charges and require it to pay for grain which it had never received. The plaintiff contended that fraud was not in issue under the pleadings, and the evidence directed to this issue was excluded on the first trial. In the decision on the former appeal it was said that the defendant had attempted to show that there had been a fraudulent scheme to deprive it of storage charges, but that this issue was not presented by the pleadings. It was suggested that under the general denial the defendant might have been permitted to show that a fraudulent agreement was entered into between the plaintiff and defendant's agent, and that the tickets were issued in pursuance to this agreement, and therefore did not represent actual wheat. Fraud of any other character was then not an issue. When the case came to trial the second time the only issue was, did the slips represent wheat which had been delivered to the defendant and not paid for? But the defendant again offered the evidence tending to show fraud, which had been excluded at the former trial, and it was received.

1. The first seventeen assignments predicate error upon the ruling of the trial court in the admission of this evidence, on the theory that the former opinion of this court determined its inadmissibility. This

record discloses that certain evidence tending to show why the plaintiff had taken the slips, rather than storage receipts, and the manner in which the defendant made its profits in running elevators, was excluded at the first trial and was received on the second trial. There is no doubt that an issue determined on an appeal will not be re-examined on a second appeal in the same case. The law as determined on the first appeal is the law of the case on the second appeal of the same case. But it is only questions that are decided which become the law of the case. The first appeal in this case was taken by the defendant, and the exclusion of the evidence in question was assigned as error. An examination of the former decision will show very clearly that the contention of the plaintiff cannot be sustained without an undue extension and improper application of what is known as the law of the case. The sufficiency of the complaint, the admissibility of the slips, the necessity for a bill of particulars, and the alleged improper remark of the court all received some attention, and a new trial was ordered because of an improper and prejudicial remark by the trial court in the presence of the jury. The correctness of the rulings excluding the evidence which was admitted at the second trial was not considered or determined, and therefore the doctrine of the law of the case has no application.

2. The assignments of error numbered eighteen to thirty-one, inclusive, relate largely to the improper reception of evidence. The defendant's evidence on the second trial was directed to two distinct issues: (1) That, if any grain had been delivered into the elevator, it had been delivered under such circumstances of fraud and unlawful purpose as to deprive the plaintiff of any right of action against the defendant; and (2) that the plaintiff had been paid for all the grain deposited by him in the elevator. The evidence which the plaintiff contends was improperly received was directed to the issue of fraud. After it was received, the trial court evidently became convinced that it was not sufficient to establish fraud, and the issue was withdrawn from the jury. The only question submitted was whether the plaintiff had deposited any grain in defendant's elevator for which he had not been paid. It is evident that the court during the trial proceeded upon the theory that it was possible

for the defendant to produce sufficient evidence of fraud to show that the plaintiff could not recover, and that after the evidence was all in he was satisfied that it was insufficient, and therefore withdrew the issue from the jury. This being the case, we are not able to discover how the plaintiff was prejudiced by the reception of the evidence, even if it was improperly received. From the entire record it affirmatively appears that it was error without prejudice.

3. The thirty-third and thirty-fourth assignments allege error in the court's instructions. The plaintiff quotes certain paragraphs only from the following language used in the charge to the jury; but for the purpose of clearness we include all that was said by the court in this connection:

> Now the company had a right to establish and prescribe these rules (to agents), and it was the duty of Mr. Keeley, as agent of the company, to comply with—to honestly comply with—them, and treat the principal (that is, the company) honestly, and to deal fairly and honestly with the company; and it was his duty to follow out the instructions and the established rules of his employer. This being his duty, if he followed those rules and regulations prescribed, he should not have issued slips; but if he issued slips, and the party to whom they were issued did not enter into any conspiracy or any scheme for the purpose of defrauding and cheating the principal in any way out of the property, I might term it, of the company, to the detriment of the company, even if he issued slips, the party who received those slips evidencing the amount of grain that was deposited * * * or where, as it is claimed in this case, the bailee, the Northwestern Elevator Company, has converted the grain, he can recover then, in that case, the value of the grain. The fact that the plaintiff may have entered into a scheme or understanding with the agent of the company for the purpose of cheating and defrauding the company out of storage, and for no other purpose, does not, of itself, operate to prevent him from recovering in the case. He is entitled, I say, to recover, providing he has deposited the grain.

It is claimed that this language is misleading and necessarily tended to confuse the jury; that while the court does not charge that if the party depositing the grain entered into a scheme for the purpose of defrauding and cheating the principal that there could be no recovery, yet the negative of the proposition submitted to the jury would be as inevitably fixed in the minds of the jury as if the court had instructed them on the converse of the proposition. It is possible that the idea in the mind of the court could have been more clearly expressed by a more direct form of language; but the meaning is evident. It must be remembered that considerable evidence had been offered and received, and doubtless much had been said in the presence of the jury about fraud. Very naturally, and as we consider properly, the court referred to the matter thus indirectly for the purpose of excluding the issue from the jury. The unequivocal purport of the charge was to say to the jury that even if Keeley had disregarded his instruction and issued slips, and even if the plaintiff had received the slips for the purpose of defrauding the company out of storage charges, those facts would not prevent a recovery, providing the plaintiff had actually deposited the grain and it had not been paid or accounted for by the defendant. The court in effect told the jury that the plaintiff could recover if he had deposited wheat with the defendant at its elevator in Clara City for which he had not received pay from the defendant. This clearly appears from an examination of the entire charge.

4. The plaintiff also contends that the court erroneously instructed the jury as to the burden of proof on the issue of payment. As we read the entire charge, it is not at all clear that it is open to this objection. See 4 Wigmore, Ev. § 2483; Thayer, Prel. Treat. Ev. c. 9; 6 Harvard L. R. 125. But even if it can be so construed, it is not error of which the plaintiff can avail himself at this time, as it was his duty to call the court's attention to the language with which he found fault and ask the court to make the charge clear and unambiguous. It is probable that the plaintiff really had no objection to the charge in this respect at that time, as the record suggests that he then understood that he had the burden of proving, not only that the wheat had been delivered to the defendant, but that it had not been paid for. It is alleged in the complaint that the defendant refused to purchase

97 M.—4

or pay for any of the grain in question. Evidence upon this issue was offered as a part of plaintiff's original case, and in his brief plaintiff's counsel says:

> The complaint is for conversion. To recover plaintiff was obliged to satisfy the jury that he deposited wheat with the defendant at its elevator at Clara City for which he had not received pay from the defendant.

It is possible that upon this theory the court gave the following instruction, to which the objection is now taken:

> The duty devolves upon the plaintiff to make out his cause by a fair preponderance of the evidence; that is to say, that the evidence in this case, before the plaintiff is entitled to recover, as in all civil cases, must preponderate in favor of the plaintiff; that is to say, the evidence in the case on the part of plaintiff must be more convincing to you than the evidence on the part of the defendant. Unless it is so convincing, unless it satisfies you he is entitled to recover, unless he has satisfied you by a fair preponderance of the evidence that he is entitled to recover, no recovery can be had in this case and defendant is entitled to your verdict.

Fairly construed, this is no more than a charge that the duty devolves on the plaintiff to make out his case by a fair preponderance of the evidence. If plaintiff's counsel was not satisfied that the charge was a clear statement of the rule as to the burden of proof, it was his duty to call the attention of the court to the language and ask that it be made more specific. As said in Rutherford v. Selover, 87 Minn. 495, 92 N. W. 413, "The court had no intention of shifting upon plaintiffs the burden of proof as to affirmative issues presented by defendants. If plaintiffs thought the instructions likely to be so understood by the jury, they should, under the rule laid down in Steinbauer v. Stone, 85 Minn. 274, 88 N. W. 754, have called the court's attention to the matter at the time; and, having failed to do so, they are in no position to complain now." The established practice of the court in this respect was not changed by chapter 113, p. 121, Laws 1901; Rutherford v. Selover, supra; Lahr v. Kraemer, 91 Minn. 26, 97

N. W. 418. In Applebee v. Perry, 87 Minn. 242, 91 N. W. 893, the court said: "It is well settled in our state that the omission of material instructions, or indefiniteness or insufficiency, or even obscurity, in the charge of the court, is no ground for error or for a new trial, when the attention of the court was not at the time specifically called to the defect, and further and more definite instructions asked for. This rule has not been affected by the passage of Laws 1901, p. 121, c. 113. Should we hold otherwise, and that chapter 113 covers an instruction which is strictly accurate, although not quite as complete as the facts in the particular case might warrant, we should be placing counsel who fails to except under such circumstances in a better position than one who has excepted at the time of the charge."

The plaintiff also attempts to predicate error upon the fact that the court improperly instructed the jury to take certain exhibits to the jury room. A part of the exhibits referred to were proper for the consideration of the jury, and as the attention of the court was not called to the matter at the time the plaintiff cannot now be heard to object.

The other assignments of error have been considered, but are without merit.

The order appealed from is affirmed.