# MARGARET TORKELSON v. MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY.[1]

February 2, 1912.

Nos. 17,407—(208).

**Contributory negligence question for jury.**

Plaintiff's intestate, in charge of a large crew *reconstructing defendant's* switchyard, in constant use for traffic, was struck and killed by a switch engine. *Held,* that the question of decedent's contributory negligence in failing to notice the approach of the engine, by reason of being absorbed in the discharge of his duties, was for the jury.

**Point not available on appeal.**

Failure of the court to give a full and complete definition of negligence in the charge cannot be taken advantage of upon appeal, where no assignment of error is predicated thereon in the motion for a new trial.

**Modification of charge.**

Where exception is taken to a particular statement in a charge, and the court thereupon modifies the charge to meet the objection raised, and no exception is taken to the modification so made, it will be considered that the modification was acceptable. *Held,* also, that the modification made, when considered in connection with the whole charge and the evidence, was not prejudicial to appellant.

[1] Reported in 134 N. W. 307.

[Note] Duty of employee engaged in repairing or cleaning track to look out for his own safety, see note in 6 L.R.A.(N.S.) 646.

Action in the district court for Waseca county by the administratrix of the estate of Nels Torkelson, deceased, to recover $5,000 for the death of her intestate. The negligence complained of was that defendant and its servants failed to give any warning or signal of the approach of the train and engine by ringing the bell or sounding the whistle, and the train was running at an excessive speed. The answer alleged want of care on the part of decedent. The reply was a general denial. The case was tried before Childress, J., and a jury which returned a verdict in favor of plaintiff for $5,000. From an order denying defendant's alternative motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*W. H. Bremner, F. M. Miner, P. McGovern* and *George W. Seevers,* for appellant.

*Charles Spillane, F. E. Clinite* and *Moonan & Moonan,* for respondent.

HOLT, J.

This action was brought to recover damages for the negligent killing of plaintiff's intestate, Nels Torkelson, on October 17, 1910. The trial resulted in a verdict for plaintiff. Thereupon the defendant made the blended motion for judgment notwithstanding the verdict or for a new trial. An order was made denying the motion in toto, and from this order the defendant appeals.

The grounds now urged for reversal are these: (1) The deceased, Nels Torkelson, was as a matter of law guilty of contributory negligence. (2) The court gave erroneous instructions to the jury.

An outline of the situation may be thus stated: Nels Torkelson had worked for the defendant upon or about its railway tracks for fifteen years prior to the accident resulting in his death. During the last seven years he was foreman. In the summer and fall of 1910 the defendant was rearranging and rebuilding its yards at Cedar Lake, in Hennepin county, Minnesota, and Torkelson was in charge of the crew doing the work. In the forenoon of October 17, 1910, the day of the accident, he had some sixty men working under

him, mostly Greeks, so that he had two assistants who were conversant with that language to aid in directing the men. A new lead track was being constructed, with ten or more yard tracks branching out from it, and since it was laid near and almost parallel to the old, it necessitated cutting and tearing out the yard tracks or spurs branching out from the old lead track. But since the handling of defendant's traffic required constant use of the yard, the old tracks were left and used till it became imperative to remove some portion thereof in order to construct the new. Near the south end of the lead track, the yard track designated as No. 9, branched off, and the fifth yard track, counting north from No. 9 and known as No. 4, diverged from the lead about five hundred feet north of No. 9.

At about 11:10 a. m. on the day mentioned, the deceased was standing a little northeast of the switch for No. 9 track just referred to, and gave some directions to his assistant. At that time a switch engine passed going northerly on the lead track to yard track No. 4, went upon last-named track, was coupled to eight loaded cars, pulled back onto the lead track, and proceeded south at the rate of from six to ten miles an hour. To the south was upgrade. The locomotive was coupled to the cars, so that the tender was in front in going south.

As the tender approached switch No. 9, Torkelson, according to the testimony of the engineer, was then on the east of the lead track, walking toward the southwest near the track, and evidently about to cross diagonally at the switch, or, according to other evidence, he was standing between the rails near switch No. 9, examining the track about to be torn up at that point. There is also evidence to the effect that part of the duties of Torkelson was to examine the rails and material torn out, and select such as could be used in the new construction. There was a curve in the lead track, and also in yard track No. 4; but, had the deceased looked toward the north, he could have seen the approaching train in ample time to get out of its way. As he thus stepped between or stood between the rails, he appeared to be unconscious of the oncoming train, and was struck down; the forward wheels of the tender running over and killing him. He was a

competent foreman, evidently aware of all the dangers incident to the work in a switchyard in constant use. He was in prime of life, active, and in full possession of the senses of sight and hearing.

In the motion in the court below error was assigned on the ground that there was no evidence of any negligence of the defendant. This was not pressed upon the oral argument in this court, and counsel may have intended to abandon it, for this statement occurs in appellant's brief: "All of the assignments of error involve the same propositions as they all relate to the question of the negligence of plaintiff's intestate and the degree of care required of him under the circumstances." It may, however, be stated that one of the negligent acts alleged in the complaint was failure to give the customary warning of the approach of the train by ringing of the bell. The fireman whose duty it was to ring testified that it was not rung, because he was otherwise engaged, and persons within fifteen to twenty-five feet of where the locomotive passed just before Torkelson was run down also testify to the same effect. Furthermore, there is evidence of the custom to warn by use of the bell persons who were at work in the yard. It is therefore manifest that the question of defendant's negligence or failure to give the customary warning was for the jury. This was the only item of alleged negligence submitted to the jury.

The defendant insists that Nels Torkelson was, as a matter of law, guilty of contributory negligence. We cannot agree to that. It is true that in railroad yards employees, who are required to cross and go upon tracks where locomotives and cars constantly pass, must exercise care and vigilance commensurate with the grave dangers surrounding them. The decisions to this effect are so well known that citations are unnecessary. The difficulty is found in applying the rule to the circumstances of each case. Railroad employees must work upon and around tracks where engines and cars run. Some work is such that the employee can give all his attention to his own safety in passing over tracks. In other work his attention must, in a greater or less degree, be engrossed on the particular matter in hand, and thereby diverted from approaching danger. When the use of the eye is demanded upon some particular item of work in a certain

direction, we depend to a large extent upon the sense of hearing to apprise us of what may threaten from other directions. This is understood, and therefore the custom prevails of giving signals by sound, such as the ringing of a bell, in a railway yard. The care required by an employee of a railway company working in and about a switch yard depends on such a variety of facts and circumstances, some of which may be in dispute, that rarely may it be said, as a matter of law, that contributory negligence exists.

The appellant confidently points to the cases of Sours v. Great Northern Ry. Co. 84 Minn. 230, 87 N. W. 766, and Magliani v. Minnesota Transfer Ry. Co. 108 Minn. 148, 121 N. W. 635.

In the Sours case no construction work was going on in the yard. Hence Sours had no right to assume that engineers were on the lookout for men absorbed in such duties that they could not all the time keep their eyes on moving objects about them. Sours had just one thing to do—to carry a lantern across a number of tracks. The lantern needed no care. He saw cars shunted and trains moving. His whole attention should have been devoted to his own safety. He testified, and upon the facts told by him, and the physical situation, the court held rightly that contributory negligence precluded a recovery.

In the Magliani case it appears that the deceased had quit the work, had nothing to do except to proceed to the boarding car, could select a path of perfect safety outside the tracks, but chose either to walk on a track which was in common use, or stepped onto it in front of the approaching locomotive without using his eyes. The syllabus in that case clearly indicates that the evidence in the present case makes it the province of the jury, and not the court, to say whether Nels Torkelson was negligent in taking the position he occupied when struck, or in failing to notice the approaching train.

We must assume that he realized the dangers in the yard, that he possessed the usual desire of men to avoid bodily injuries and death, and to that end used his faculties. It was for the jury to say to what extent he could devote his eyes to the work in hand, in view of the fact that train crews knew that a large number of men were

engaged in work upon and near the tracks, and that warning by the ringing of bells was customarily given, and also to what extent the proper discharge of his duties necessarily engrossed his attention. These conditions, and also matters in dispute bearing upon the question of his conduct and position at the time of the accident, make it impossible for a court to say, as a matter of law, that Torkelson failed to use that care which the ordinarily prudent person would use in the same situation.

The facts in the instant case present a situation more like that in Floan v. Chicago, M. & St. P. Ry. Co. 101 Minn. 113, 111 N. W. 957, than in either the Sours or Magliani cases above cited. What is said in Erickson v. St. Paul & Duluth R. Co. 41 Minn. 500, 43 N. W. 332, 5 L.R.A. 786, is also applicable here.

The charge is subject to criticism, in that the proper and usual definition of negligence was not given, and in that the court stated that certain evidentiary matters, if found true, constituted negligence or freedom from negligence as the case might be. The legal definition of negligence and contributory negligence should be given, and then the jury are to decide whether or not the facts disclosed by the evidence bring the acts of the party charged with negligence or contributory negligence within such definition. But in the motion for a new trial no assignment of error was predicated on the claim that the court did not give the jury a standard to go by in determining Torkelson's alleged contributory negligence or defendant's negligence. Hence that fault in the charge cannot now be considered.

The defendant presented no request to instruct the jury, but at the close of the charge this took place:

"Mr. Bremner: The defendant excepts to each and every one of the instructions given by the court, and particularly excepts to that instruction to the effect that the burden of proving that the plaintiff's intestate was not engaged in the performance of his duty rests upon the defendant. We will save a general exception to the whole charge."

After a recess: "Present: The same as before. The Court: Gentlemen of the jury, my attention has been called to a possible

mistake that I made in giving you the charge. In order to be sure about it this time, I have written down just what I want to say. I did not intend to say that the burden of proving that deceased was not engaged in the performance of his regular duties, at the time of the accident, is upon the defendant. What I intended to say was this: The test in this case of contributory negligence is this: Was the deceased at the time of the accident engaged in the performance of his regular duties? If he was not, he was guilty of contributory negligence; but the burden of proving contributory negligence is upon the defendant." No exception was taken to this modification made to meet the appellant's special objection to the charge.

This modification was not, perhaps, accurate, and in certain respects too favorable to the defendant. There can be no doubt that Torkelson was engaged in the performance of his duties when he was struck down, and it is likely that defendant was satisfied with the test which the court gave by which to judge the conduct of the deceased.

Taking the whole charge, it is clear that the court attempted to convey the idea to the jury that Torkelson was as a matter of law guilty of contributory negligence, unless he was at the time of the collision actually engrossed or absorbed in the performance of his duties, and did not charge that if he was merely engaged in such duties he was free from negligence; for the jury were told: "Men that are working about the tracks must take care of themselves. They must look out for themselves. * * * People who are upon the track, and have an unobstructed view of the trains that are approaching, must look out for themselves. * * * But in cases where people are working upon the track, and absorbed in their duties, the law does not hold them to strict accountability to this rule. * * . * Such workmen, when engaged in their work, are required to use reasonable care for their own safety."

We conclude that, in so far as the charge was faulty by failure to define negligence and contributory negligence, it cannot avail defendant now, because not excepted to in the motion for a new trial, and that the modification given of the charge was tacitly acquiesced

in by defendant, and in view of the whole charge and the evidence was not prejudicial to defendant.   Steinbauer v. Stone, 85 Minn. 274, 88 N. W. 754; Kramer v. Northwestern Elevator Co. 97 Minn. 44, 106 N. W. 86; Applebee v. Perry, 87 Minn. 242, 91 N. W. 893.
    Order affirmed.

    PHILIP E. BROWN, J., being absent on account of illness, took no part.