## JAMES EVANS v. DRAKE & STRATTON COMPANY.[1]

July 19, 1912.

Nos. 17,710—(204).

**Questions for the jury.**

Upon the evidence, plaintiff's alleged contributory negligence and assumption of risk were questions of fact, and not of law.

**Safe employment — charge to jury refused.**

Where the court in a personal injury action had given full and clear instructions on the defenses of contributory negligence and assumption of risk,

[1] Reported in 137 N. W. 189.

---

Note.—As to duty of employee engaged in repairing or cleaning track to look out for his own safety, see note in 6 L.R.A. (N.S.) 646.

As to servant's assumption of risk of dangers created by master's negligence, which might have been discovered by the exercise of ordinary care on the part of the servant, see note in 28 L.R.A. (N.S.) 1250.

*held,* that the following requested instruction, stating the master's duty . in conjunction with the servant's assumption of the risks of the employment, was properly refused as inaccurate and misleading, to wit: "Defendant was under no obligation to furnish safe employment for plaintiff, or to do its work in a safe way, provided the dangers of doing the work in the way it was done were open, apparent, understood, and appreciated by plaintiff, or would have been by the exercise of common sense and observation on his part."

Action in the district court for St. Louis county to recover $2,000 for personal injuries. The substance of the pleadings will be found in the third and fourth paragraphs of the opinion. The case was tried before Hughes, J., and a jury which returned a verdict in favor of plaintiff for the amount demanded. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Spencer & Marshall,* for appellant.

*Samuel A. Anderson* and *Warner E. Whipple,* for respondent.

HOLT, J.

The defendant, engaged in stripping a mine near Hibbing, had plaintiff in its employ as foreman of a crew of about sixteen drillers and blasters. In doing the work, a trench called the "approach" was sunk, leading into the pit or ore body to be stripped or uncovered. In this trench two narrow gauge railway tracks, with connecting switches and cross-over tracks, were laid. A steam shovel on one of these tracks loaded the material into dump cars, and these were pulled out to the dump and returned by so-called dinky engines. The tracks were on quite a downgrade towards the pit. The trench where drillers and blasters were working on December 20, 1909, when plaintiff received the injury, was some twenty feet deep. Plaintiff and the men under him were at the time in this approach, drilling and blasting the bank of the trench next to the track upon which the engine with the empty dump cars returned to the steam shovel for loading, and some one hundred to one hundred fifty feet nearer the dump than the shovel was; that is, the steam shovel was working behind the men and nearer the pit of the mine.

The work of the drillers and blasters at this time appears to have consisted in drilling holes into the breast of the bank, often to a depth of fifteen or sixteen feet. These holes, after being properly scooped out, filled with black powder, and tamped, were exploded, thereby loosening the ground so that the steam shovel could work to advantage. The bank where plaintiff and his men were working at the time of the injury was irregular, and from five to fourteen feet away from the nearest rail of the track mentioned. Jagged masses of material blasted out or loosened came very near the track, so that in the work, and especially when using unwieldy tools, such as measuring rods and long handled shovels, some being sixteen feet long, the men of necessity had to be upon and along the track. At about eleven o'clock in the forenoon of the day stated an engine attached to some empty cars came down toward the steam shovel and struck down plaintiff, who, with another man, was measuring the depth of some holes then being drilled for blasting.

Plaintiff claims he was ruptured and seriously injured. The complaint alleged that the nature of the work was such that men engaged in drilling and blasting necessarily and frequently were upon and about the tracks to defendant's knowledge; that it was necessary, in order that the men should be reasonably safe and reasonably protected, that trains, before coming to where the work was being done, should give adequate warning by bell and whistle, and should come to a stop till the men had opportunity to get out of danger; and that it was the custom and practice to give such signals and to so stop trains. It is also averred that there was a bend in the trench, so that a train coming down toward the pit could not be seen at the place where plaintiff was, when injured, until within one hundred fifty feet of him. It is then alleged that while plaintiff, absorbed in his work, but vigilant in the use of his senses to ascertain impending dangers, was on or near the track at the point mentioned, the defendant ran one of its trains carelessly and negligently down upon plaintiff at a high and reckless speed, without stopping at the customary place, without giving the usual signals, and without keeping a proper lookout to avoid injury to plaintiff and the men working there.

Defendant pleaded contributory negligence and assumption of risk as a defense.

Plaintiff recovered, and defendant appeals from the order denying its alternative motion for judgment notwithstanding the verdict or a new trial.

The errors assigned in this court are: (1) That plaintiff was guilty of contributory negligence and assumed the risk, hence judgment should now be ordered in defendant's favor; and (2) if that be not true, the court erred in refusing to give a requested instruction to the jury, therefore a new trial should be awarded.

In considering the contention that plaintiff was, as a matter of law, guilty of contributory negligence, his conduct must be judged in the light of the situation. His work, its character and place, and the usual and customary way in which defendant's servants operated the trains, gave signals, and looked out for safety of the men working on or about the track, must all be taken into consideration. To some extent, at least, plaintiff had a right to assume that the train crew would use ordinary care to avoid injury to him, and also that they would continue to use the customary signals and precautions in operating the train. There was evidence to go to the jury that, as the trains came down towards the place where the drillers and blasters were working, they would stop before reaching them and wait till plaintiff, the foreman, signaled; also that the whistle would be blown when approaching, in addition to ringing the bell. It is clear that, if the jury believed such was the practice, it had an important bearing upon the question whether plaintiff was in the exercise of ordinary care when struck; for there was no claim that the train stopped, or that plaintiff or any one from his crew signaled it to move ahead. There was also testimony tending to prove that neither the whistle sounded nor the bell rang before the collision. True, evidence sharply contradicting the alleged practice of stopping trains before coming up to the blasting crew, and not moving till signaled by the plaintiff, was adduced, together with positive testimony that the whistle was blown and the bell was rung before the accident; but clearly the determination of the truth of these opposing contentions was for the jury.

Defendant points to the case of Sours v. Great Northern Ry. Co. 81 Minn. 337, 85 N. W. 114; Id. 84 Minn. 230, 87 N. W. 766, and Id. 88 Minn. 504, 93 N. W. 517, as being on all fours with the case at bar. But we think a marked distinction exists. Sours had no work to do upon the tracks. He was merely carrying a lighted lantern across a number of tracks, which were in constant use by trains, for the purpose of handing it to a trainman on a train about to pass there. In passing over the tracks he could give his undivided attention to his own safety. Plaintiff in the instant case must work upon or close to the track, his attention of necessity absorbed in his own work and that of his large crew. The danger to the train crew from the work being done by the blasting crew is another element which may be considered in determining whether plaintiff could rely to some extent on the fact that the train would not approach until those in charge were advised that it could safely pass. Floan v. Chicago, Milwaukee & St. Paul Ry. Co. 101 Minn. 113, 111 N. W. 957, and Torkelson v. Minneapolis & St. Louis R. Co. 117 Minn. 73, 134 N. W. 307, are more applicable to the facts in the instant case than that of Sours v. Great Northern Ry. Co. supra.

If the trains stopped before attempting to pass the blasting crew, and remained standing until signaled to come on by plaintiff, it cannot well be contended that plaintiff assumed the risk of the trainmen coming down upon the men without stopping or without being signaled. The same with reference to the other acts of negligence. If a master is negligent to the knowledge of the servant, there is reason for the rule that the risk of injury from such negligence is assumed by remainng in the service; but it is different as to unanticipated acts of negligence. In our opinion, plaintiff's negligence and assumption of risk were questions of fact, and not of law, and were properly left to the jury.

Defendant assigns error on the refusal to give this instruction to the jury: "Defendant was under no obligation to furnish safe employment for plaintiff, or to do its work in a safe way, provided the dangers of doing the work in the way it was done were open, apparent, understood, and appreciated by plaintiff, or would have been by the exercise of common sense and observation on his part." In

so far as the requested instruction embodies the rule of assumption of risk, it was fully and clearly conveyed in the court's charge and in an instruction given at defendant's request. And in so far as it attempts to define the master's obligations, it does not state the law accurately. Combining, as the instruction does, a statement of the master's duty with the servant's assumption of risk, the law with respect to both must be stated correctly, or else the impression left on the minds of the jury will be misleading. The obligation of the master is to exercise ordinary care to furnish reasonably safe employment and to do the work in a reasonably safe way. This duty rests on the master at all times. His violation of this obligation does not change or remove it; but a servant remaining in the service, with knowledge and appreciation of the danger to him from the master's violation of duty, is without remedy if injured therefrom.

Order affirmed.